DECISION
This case comes once more before the Court this time on the motion of the defendant, Rhode Island Hospital ("the Hospital"), to reconsider this Court's decision on December 12, 1996 not to strike the plaintiff's claim for punitive damages against it. In response, the plaintiff has moved for reconsideration of this Court's decision to strike his claim for punitive damages against the media defendants, who owned or controlled commercial television broadcasting stations, which he alleges broadcast confidential health care information about him. Thereupon, one of the media defendants, Walter Cryan, the "Anchor" of the offending news broadcast, has moved contingently for reconsideration of the Court's decision not to strike the claim for punitive damages against him. Needless to say, the respective parties with favorable decisions have objected to any reconsideration of those decisions.
This Court is most reluctant to reconsider its decisions. There is no express procedure in the Rules of Civil Procedure for reconsideration of the Court's pre-trial rulings on motions. Furthermore, there is no reason why the doctrine of "law of the case," as defined in Salvadore v. Major Electric Supply, Inc.,469 A.2d 353, 355-56 (R.I. 1983) should not equally apply to the justice who originally issues an interlocutory order as to the other justices of same court in the same case. The doctrine is, after all, a rule of policy and convenience. It will not always apply where the moving party introduces material that significantly extends the record. Pari v. Corwin, 620 A.2d 86, 87 (R.I. 1993), but the moving parties in this case are asking this Court to change its ruling on exactly the same record it had before it when it originally ruled.
These motions are somewhat like a motion for a new trial under Rule 59 after a trial to the court without a jury. Such a motion may be granted only upon a showing of manifest error of law or newly discovered evidence not available at the trial and of sufficient importance to warrant a new trial. AbbeyMedical/Abbey Rents, Inc. v. Mignacca, 471 A.2d 189, 194 (R.I. 1984). In this case, no moving party has claimed there is newly discovered evidence, nor does any party urge that the Court manifestly erred in the law. They disagree with the Court's fact-finding. This Court found that on the record, as a matter of fact, the Hospital did authorize and participate in the wrongful act of its employees, and that the media employers of Walter Cryan did not.
Nevertheless, having said all that but having taken the time to hear the parties, and because every adverse ruling in this case is the subject of an application for appellate review, this Court will consider the respective motions for reconsideration without regard to their propriety or timeliness.
Rhode Island Hospital argues that it is vicariously liable, if it at all, for any violation of the Confidentiality of Health Care Information Act (G.L. § 5-37.3-1, et seq.). The only individuals involved in the alleged release of information protected by the Act, they say, were two of its employees. No "managing officer" of the Hospital corporation, they argue, had any knowledge of or participated in the release.
The Hospital correctly cites Rhode Island common law to the effect that a principal or employer will be liable for punitive damages for the tortious conduct of its agent or employee only if that principal or employer participated in, authorized or ratified the actions of the agent or employee.
According to § 5-37.3-9 (a) anyone who violates the provisions of chapter 37.3 of title 5 of the general laws may be held liable for actual and exemplary damages. Nonconsensual disclosure of "confidential health care information" is forbidden, with certain specific exceptions, by § 5-37.3-4. "Confidential health care information" is defined by §5-37.3-3 (c) to mean "all information relating to a patient's health care history, diagnosis, condition, treatment or evaluation obtained from a health care provider who has treated the patient." According to § 5-37.3-3 (a) "`health care provider' means any person licensed by this state to provide or otherwise lawfully providing health care services, including . . . a . . . hospital, and any officer, employee or agent of that provider acting in the scope of his employment or agency related to or supportive of health services."
Liability under § 5-37.3-9 for actual and exemplary damages for a violation of § 5-37.3-4 would be strict, if the statutes were to be read literally. Exemplary damages would be permitted by the statute, whether or not they might have been permitted at common law, for the obvious reason that in most cases actual damages will usually be so slight as not to make private enforcement of the protection of the Act worthwhile. The Court, nonetheless, notes that the common law standards have been imported into the Act by our Supreme Court in Washburn v. RiteAid Corp., 695 A.2d 495, 499 (R.I. 1997).
At paragraph 6 on page 4 of its December 12, 1996 decision, this Court found that the physician, Dr. Richard Millman and the Hospital transferred confidential medical information to Ms. Deborah Ferraro. Although the Court did not specifically so find, it is undisputed that the plaintiff, the patient receiving the health service, did not consent. Since Ms. Ferraro was at the Hospital at the invitation of the Hospital to promote favorable publicity for the Hospital, and since the agent of the Hospital who invited her had actual and apparent authority to release and transfer the confidential health care information to her, it is clear that for the purpose of this release and transfer the Hospital, as a corporate entity, authorized and participated in the transfer. If only the highest management level of the Hospital hierarchy, which rarely is ever directly involved in the release or transfer of protected information, could authorize routine release of confidential health care information, private enforcement of the Act against corporate health care providers by suit at law would be effectively nullified. A far different question might be presented if release of this information, or its like, had been expressly forbidden by the Hospital's top management, or if such a decision to release had been expressly reserved to such level of management.
The Hospital, fairly enough, points out that the same standard was not applied to the corporate and partnership media defendants. The Court applied the "knowing-and-intentional" standard to the media defendants to deal with their distinctive First Amendment and Due Process constitutional arguments. See
pages 18-19 of the December 12, 1996 Decision. See also BMW ofNorth America, Inc. v. Gore, 517 U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). This Court is satisfied that the Palmisano v.Toth requirement of malice-amounting-to-criminality requirement is satisfied by the owing-and-intentional standard of the criminal sanction in § 5-37.3-9 (b).
The difference between the two classes of defendants relates to the question of what it is that each defendant must know and what it is that each defendant must intend. This Court finds that in this case, a defendant must have known that it was then releasing `confidential' health care information as defined in § 5-37.3-3 (c) and that the patient had not consented as described in § 5-37.3-4. The knowledge of both of those facts are clearly proved to have been in the minds of both Dr. Richard Millman and Mr. Richard Piester, both of whom were agents of the Hospital acting within the scope of their agency in releasing the information. Their knowledge must be imputed to their principal. Both of these parties intended to release the information to Ms. Ferraro. She did not obtain the information accidentally or mistakenly or illicitly. Both releasing parties had full authority from the Hospital to release the information. The corporate defendant intended them to exercise that authority by granting the power to exercise that authority to them. Neither defendant applied any safeguard to prevent the information from being further released to the general public.
The liability of the principal media defendants is different both as to what they were required to know and what they must have intended. These media defendants do not regularly deal with `confidential health care information,' the release of which is prohibited by the statute, as does the Hospital. At the time of its release only Walter Cryan knew that the station was releasing "confidential health care information" without the patient's consent, and only he was causing that release intentionally. In effect, station management, through John Woodin, had admonished him not to release the videotape if it was in fact `confidential
health care information.'
What station management and John Woodin didn't know was that what Walter Cryan was about to release was in fact confidential
health care information, since they reasonably believed that the patient was not identifiable. What they did not know was that Walter Cryan, even after review of the tape, which must have revealed to him that the plaintiff was clearly identifiable, decided to release the information anyhow. To put it another way, Woodin did not know that the plaintiff was in fact identifiable on the tape as broadcast. They thought the station was releasing anonymous health information not attributable to a particular patient.
This Court has declined to charge the ownership of the station with liability for Mr. Cryan's independent reckless conduct. In that sense the principals, of which Mr. Cryan was an agent did not `intend' to release `confidential' health care information. They are not liable under the knowing-and-intentional rubric of § 5-37.3-9 (b), as must be constitutionally imported into § 5-37.3-9 (a).
The motion of Rhode Island Hospital to reconsider the Court's denial of its motion to strike the plaintiff's claim for punitive damages is denied. The plaintiff's motion to reconsider the decision to strike punitive damage claims against the owners and operators of the station is also denied.
Those denials render Walter Cryan's contingent motion for reconsideration moot. The Court does, however, appreciate the defendant's bringing to its attention an apparent inconsistency in its December 12, 1996 Decision.
The Court did find that: "After communicating with defendant John Woodin, the station's news director, Mr. Cryan viewed the tape and determined that in his opinion the plaintiff was not identifiable and would not be recognized." He was clearly mistaken in his opinion. His opinion was as recklessly founded as his decision to air the tape was intentional, notwithstanding, that he must have known the plaintiff was clearly identifiable. He did review the film, and in that sense he did "heed Mr. Woodin's admonition," as this Court said he failed to do. What he did not do was to see the obvious when he did review it. He fully intended to show the tape of plaintiff's sleep apnea attack, irrespective of its confidentiality.
Each prevailing party will submit an order for entry on notice to all other parties.