307 A.2d 773.

STATE *vs.* JOHN EDWARD CARILLO.

JULY 19, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

ROBERTS, C. J. This is an indictment charging John E. Carillo with a violation of G. L. 1956 (1969 Reenactment) §11-5-1, in that he assaulted Pasquale Solitro with intent to murder him. At the time of the alleged assault Solitro was a guard at the Adult Correctional Institutions (ACI) where Carillo was incarcerated. After a trial before a justice of the Superior Court sitting with a jury, a guilty verdict on a lesser charge of assault with a dangerous weapon was returned against Carillo. The defendant is now prosecuting a bill of exceptions in this court.

The record discloses that on July 30, 1969, at about 7 a.m. Solitro was assaulted while on duty as a guard on tiers "P," "Q," and "R" at the ACI. Both Solitro and a fellow guard, Theodore Danielson, who was on duty in an adjacent cellblock, identified defendant as the assailant. The defendant offered no evidence in his own behalf.

I.

The defendant contends that the denial of his pretrial motion to quash the indictment was error. The motion was based upon defendant's assertion that he had been denied arraignment within 24 hours of his arrest as re-

quired by §12-7-13.[1] The defendant argues that the indictment should have been dismissed, alleging that any violation of §12-7-13 voids the entire proceeding *ab initio*.

We consider, first, the policy considerations which underlie §12-7-13. In *Culombe* v. *Connecticut*, 367 U.S. 568, 584-85, 81 S.Ct. 1860, 1869-70, 6 L.Ed.2d 1037, 1047-48 (1961) (footnoting §12-7-13 as an example), Justice Frankfurter discussed the purpose of such legislation. He said: "Recognizing the need to protect criminal suspects from all of the dangers which are to be feared when the process of police interrogation is entirely unleashed, legislatures have enacted several kinds of laws designed to curb the worst excesses of the investigative activity of the police. The most widespread of these are the ubiquitous statutes requiring the prompt taking of persons arrested before a judicial officer; these are responsive both to the fear of administrative detention without probable cause and to the known risk of opportunity for third-degree practices which is allowed by delayed judicial examination."

In an effort to discourage unnecessary delay in arraignment, the United States Supreme Court in its holding in *Mallory* v. *United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), vacated a conviction based largely upon a confession obtained by officers prior to arraignment. The Court's holding was not based on any constitutional ground but rather on its conclusion that Fed. R. Crim. P. 5(a) had been violated. In reversing the conviction, the Court was exercising its general supervisory power over lower federal courts. While the *Mallory* decision is without constitutional dimension and, therefore, is not binding

---

[1] That section was repealed by P. L. 1972, ch. 169, sec. 17. Superior Court Rule of Criminal Procedure 5, which became effective on September 1, 1972, eliminates the 24-hour requirement and provides simply that an arrested person be brought before a judge of the District Court "without unnecessary delay."

upon this court, its holding provides no support for defendant's contention here that a violation of the 24-hour requirement voids the indictment *ab initio*. In *Mallory* the Court simply held that any evidence obtained while the defendant was held in custody illegally must be excluded at trial.

This defendant has failed to establish any prejudicial effect upon his subsequent trial for assault. It appears that during the period of confinement this defendant alleges was illegal no evidence whatever was obtained which was later used to convict him of this crime. While the authorities may have acted improperly in failing to arraign defendant within 24 hours as required by statute, there is nothing in the record which would indicate that this action prompted his subsequent conviction.[2]

The Minnesota case, *State* v. *Thompson*, 32 Minn. 144, 19 N.W. 730 (1884), to which defendant directs our attention, involves the dismissal of an indictment on which the state had failed to arraign the defendant for over a year and, therefore, raises due process considerations which are not present in this case. *See also State* v. *Radoicich*, 66 Minn. 294, 69 N.W. 25 (1896).

## II.

There is no merit to defendant's contention that a lack of evidence precluded any jury instruction on assault with intent to commit murder. Since Carillo was convicted of the lesser offense of assault with a dangerous weapon and was not convicted on the more serious charge, he was prejudiced in no way by the instruction, even if erroneous.

---

[2]The defendant has not alleged and the record does not indicate that he was interrogated in any way during the period prior to his arraignment, and certainly no confession was introduced at the trial. We might add that defendant is not without a remedy to vindicate any rights he may have under the statute.

## III.

The defendant alleges that the answer to a hypothetical question posed by the prosecutor should have been stricken. The testimony in question was that of Dr. Kenneth E. Liffmann, who treated the injured guard soon after the assault. The hypothetical question posed by the prosecutor was designed to establish that the wounds inflicted might have been fatal and thereby justify a verdict of guilty on the charge of assault with intent to murder. Since the jury failed to return a verdict on that charge, that testimony was clearly given no consideration. Such testimony was unnecessary to establish guilt on a charge of assault with a dangerous weapon. Therefore, the admission of this testimony, even if it failed to establish with sufficient certainty the probability of a fatal injury as defendant alleges,[3] was not prejudicial.

## IV.

The defendant further alleges that the manner in which the trial justice required that peremptory challenges be exercised was prejudicial and, therefore, we assume, that he was denied his constitutional right to a trial by a fair and impartial jury as required by the sixth amendment of the Constitution of the United States. In view of the importance with which the United States Supreme Court has viewed peremptory challenges, we believe the trial justice should exercise his discretion in this matter with great care. *Swain* v. *Alabama*, 380 U.S. 202, 209-22, 85 S.Ct. 824, 830-37, 13 L.Ed.2d 759, 766-74 (1965). Clearly, the fairest way of exercising these challenges is for the defense and the state to exercise one challenge at a time alternately. As the United States Supreme Court pointed out in *Pointer* v. *United States*, 151 U.S. 396, 408, 14 S.Ct.

---

[3]*See Woods* v. *Safeway System, Inc.*, 101 R. I. 343, 346, 223 A.2d 347, 349 (1966).

410, 414, 38 L.Ed. 208, 214 (1894), the right to these challenges is "one of the most important of the rights secured to the accused."

In this case defendant fails to establish that he had exercised all of his peremptory challenges; he explains neither his failure to object to any of the jurors who sat nor the fact that his attorney indicated full satisfaction with the jury at the conclusion of the voir dire. Therefore, we are unable to conclude on the basis of the record here that the exercise of defendant's right to peremptory challenges was denied or impaired in any way.

## V.

Finally, defendant contends that the trial justice committed reversible error in failing to grant his motion to inspect the grand jury testimony of Officer Danielson, an eyewitness to the alleged assault. In *State* v. *Ouimette,* 110 R. I. 747, 298 A.2d 124 (1972), we gave a clear indication that the "secrecy" of the grand jury minutes was no longer sacrosanct. We held that while a defendant is not entitled to inspection of the grand jury minutes as a matter of right, the trial justice is obliged to grant a defendant's motion to inspect where the defendant is able to demonstrate that a "particularized need" outweighs the need for protecting the secrecy of grand jury testimony. In circumstances such as those presented by this case, where the state's witness is identified and has actually testified, little justification exists to support any of the reasons which historically underlie the secrecy of the grand jury proceedings.[4] Therefore, the burden of demonstrating

---

[4]Traditionally, grand jury proceedings are secret. The reasons given for this secrecy have been summarized as follows: "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who

a particularized need which we place upon a defendant is not a heavy one. "In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis* v. *United States*, 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973, 985 (1966).

We indicated quite clearly in *Ouimette, supra* at 763, 298 A.2d at 134, that the "* * * defendants need not show actual inconsistencies between the testimony of a witness at the grand jury and at trial * * *" in order to establish a particularized need. In *Dennis, supra* at 872-73, 86 S.Ct. at 1850, 16 L.Ed.2d at 985, Justice Fortas indicated several instances where particularized need might arise: (1) where several years have elapsed between grand jury testimony and trial, there is good reason to believe that the later testimony is not nearly as fresh as the testimony was before the grand jury; (2) where the testimony of a key witness might provide the basis of conviction; (3) where testimony concerns conversations or oral statements where slight nuances might substantially change the meaning of statements which relate to the question of guilt or innocence, and it is essential to obtain the precise substance of the statements; (4) where testimony of accomplices, informants, or parties who have demonstrated hostility is presented at trial; (5) where the trial testimony of a witness either during direct or cross-examination indicated inconsistencies, mistakes, or confusion.

Whenever a particularized need can be demonstrated,

---

may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *United States* v. *Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954); Glassman, *Maine Rules of Criminal Procedure with Commentaries*, §6.6, at 55 (1967).

due process requires that the grand jury testimony be made available to defense counsel.[5] In *Ouimette, supra* at 764, 298 A.2d at 135, we made it clear that a judgment as to whether a trial justice abused his discretion in denying a motion for an inspection of the minutes of a grand jury will turn upon whether defense counsel met the burden of establishing the need for such an inspection. We emphasized the proposition that it would serve no useful purpose to direct this court's attention to evidence that would serve the aforesaid purpose. It is the trial justice who must be thus informed at the time that the motion to inspect the grand jury minutes is made, for it is then that the judicial discretion of the court is invoked. In the instant case nothing in the record discloses that the defendant made any effort to demonstrate a particularized need for such an inspection at the time of the motion. Therefore, we are constrained to conclude that the ruling of the trial justice did not constitute an abuse of discretion.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court.

Mr. Justice Joslin did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Philip Weinstein,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline,* for defendant.

---

[5] We need not belabor our conclusion in *State* v. *Ouimette* 110 R. I. 747 at 763-64, 298 A.2d 124 at 134, n. 3, that an in camera inspection by the trial justice is insufficient where a particularized need is established. In addition, we do not believe that our holding in *Ouimette* conflicts in any way with the provisions of Super. R. Crim. P. 6(e).