DECISION
Defendants file an Omnibus Motion containing various requests relating to compliance with a previous court order and the production of additional materials which they allege are discoverable and to which they are entitled. They base the production requests variously on Rhode Island Rules of Criminal Procedure 6(e) (Secrecy of [Grand Jury] Proceedings and Disclosure) and 16(a) (Discovery by Defendant), their right to exculpatory material pursuant to the principles espoused in Bradyv. Maryland, 373 U.S. 83 (1963), a stipulation entered into by the parties and the Court's rulings on August 24, 1995. The motion to compel is premised upon their allegation that the state has not complied with R.C.P. 16(h) (Continuing Duty to Disclose) by failing to provide additional notes of witness interviews engaged in subsequent to those initially produced.
The state argues against the defendants' request for production primarily relying upon R.C.P. 16(d) (work product) and also R.C.P. 6(e), the secrecy aspects of the rule. The state contends that it has supplied all relevant material which was the subject of the Court's August 24, 1995 rulings and the stipulation to which it was a party.
The Court need not trace the history and reasons for the secrecy provisions of the grand jury process. Suffice it to relate that among them are protection of witnesses and an atmosphere conducive to uninhibited investigations. In this jurisdiction a defendant is entitled (R.C.P. 16(a)(2)) to an indicting grand jury's recorded testimony. Defendants seek recorded testimony from other grand jury proceedings alleging that their subject matter impacts upon the allegations against them in the instant case and that potential witnesses in this case testified before those grand juries.
In 1973, our Supreme Court in State v. Carillo, 112 R.I. 6, 307 A.2d 77 (1973) took an enlightened view regarding disclosure of grand jury proceedings allowing that they were not sacrosanct. It alluded to the prosecution's advantage in the process because of its access to relevant facts denied the defendant, which advantage could be offset by disclosure if defendant established "a particularized need."
The disclosure sought by the defendants involves proceedings of grand juries which have completed their tasks, thereby minimizing, if not completely eliminating, any compelling basis for continued secrecy. Consequently, the Court finds that the secrecy provisions must yield when weighed against defendants' interest in seeking relevant impeachment material which, based upon their representations, they have reason to believe may exist.
In addition, in arguing the secrecy provisions of the grand jury rule, the state ignores the plain language of the stipulation entered into with the defendants wherein it agreed to "provide to the defendants all relevant recorded testimony relating to the subject matter of the indictment regardless of which grand juries heard the evidence."
The Court finds that defendants, by their assertions based upon their own investigations, have sufficiently particularized to the Court that they are entitled to the materials sought and orders as follows:
 1. The state is ordered to produce additional statements of a witness and any notes of the interviewer taken during the course of subsequent interviews with a disclosed potential witness which have not yet been produced.
 The state is not required to produce any portions of an interviewer's notes and/or statements which constitute attorney work product, strategies, or mental impressions and thought processes.
 2. The state shall produce notes and summaries of interviews with persons named in the March 20, 1986 memorandum of investigator Lee Blais relative to an earlier RIDOT investigation and also the grand jury testimony of those persons thereto for which, the Court finds, defendants have demonstrated a particularized need.
 The state is not required to produce any portions of an interviewer's notes and/or statements which constitute attorney work product, strategies, or mental impressions and thought processes.
 3. The state shall produce notes and summaries of interviews and all grand jury testimony in the investigation of the R.I. Solid Waste Management Corporation (the Cranston Investigation) and that of the E C Construction Company involving the Prison Intake Center Project, for which the Court finds the defendants have demonstrated a particularized need.
 The state is not required to produce any portions of an interviewer's notes and/or statements which constitute attorney work product, strategies, or mental impressions and thought processes.
 4. The state shall produce notes and/or work papers of Detective Todd Catlow which bear upon his review of the books and records of Frank N. Zaino Associates for years 1988, 1989, and 1990 in relation to travel and entertainment expenses which were the subject matter of a March 13, 1995 memorandum from Detective Catlow to Assistant Attorney General J. Richard Ratcliffe.
 The state is not required to produce any portions of Detective Catlow's notes and/or statements which constitute work product, strategies, or mental impressions and thought processes.
 5. The defendants' request for notes of conversations between attorneys and/or investigators and those to whom subpoenas duces tecum were issued is denied.
 6. The state shall produce all drafts of proffers made to witnesses, without regard to form or by whom drafted, which evidence the evolution of such proffers.
 7. The state shall produce any and all sworn statements of Rodney Brusini and any grand testimony by him in related matters which have not been heretofore provided, the Court finding that defendants have demonstrated a particularized need.
 8. The state shall produce any and all exculpatory evidence of any potential state's witness. This is an expansion of the Court's August 24, 1995 ruling and is warranted by the information supplied to the Court by the defendants.
 9. Based upon the Court's specific rulings herein requiring production by the state, defendants' broad-based motion for exculpatory evidence need not be addressed and is therefore denied at this time.
It is expected that the state will act in good faith in complying with the Court's rulings as contained herein to the end that there will be no need for the Court to oversee compliance. The state shall comply with the above provisions on or before 5:00 p.m. July 19, 1996.