**In re John DOE Grand Jury Proceedings.**

No. 97–283–M.P.

Supreme Court of Rhode Island.

Aug. 4, 1998.

Lauren Sandler Zurier, Asst. Attorney General, Aaron Weisman; Helen D. Altomari, Providence, for Plaintiff.

Glenn R. Friedemann, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The issue in this case concerns the applicability of the notification requirements of the Confidentiality of Health Care Communications and Information Act (CHCCIA or act), G.L.1956 chapter 37.3 of title 5, in the context of grand jury proceedings. Specifically the parties to the instant action contest whether notifying a patient that his or her medical records have been subpoenaed by the grand jury, as required by § 5–37.3–6.1 of the CHCCIA, violates the grand jury secrecy requirements of Rule 6(e) of the Superior Court Rules of Criminal Procedure. For the reasons set forth below, we hold that the required notification does not implicate the provisions of Rule 6(e) and that thus the grand jury is obligated to comply with § 5–37.3–6.1 and to inform interested parties of the issuance of a subpoena and their right to object to the production of the records.

### I

### Facts and Travel

On various dates between January 13, 1997, and April 23, 1997, the Providence County Grand Jury (grand jury) served subpoenas duces tecum upon Rhode Island Hospital (hospital), seeking the medical records of twelve patients who were being investigated by the grand jury. Each of the twelve patients had been treated at the hospital between May 1996 and April 1997. Of the twelve sets of records sought, eight concerned tests for blood-alcohol and drug concentrations performed on those patients, while the remaining four requests sought "all medical records for treatment" on the given

dates. It is noteworthy that one of the patients whose records were subpoenaed by the grand jury died prior to the issuance of the subpoena for his records.

Citing the CHCCIA, the hospital refused to produce the requested records and instead moved the Superior Court to quash the subpoenas and/or to issue protective orders. The hospital maintained that the grand jury had failed to comply with § 5–37.3–6.1(a) and serve copies of the subpoenas on the individuals whose records were being sought together with a notice of the individuals' right to challenge the subpoenas. The state maintained that it could not comply with the notice provisions of § 5–37.3–6.1(a) without violating the secrecy requirements of Rule 6(e) and risking contempt charges pursuant to G.L.1956 § 12–11.1–5.1.[1]

A hearing was held on the hospital's motions on May 22, 1997, before a justice of the Superior Court. After hearing from counsel and conducting an in camera proceeding with a representative from the Office of the Attorney General concerning the necessity and relevancy of the documents sought, the trial justice denied the hospital's motions and concluded that the medical records were material to the grand jury proceedings and that the need for the records outweighed the privacy interests of the individual patients. Thus he ordered that the information be disclosed but solely for the purpose of investigation by the grand jury. Thereafter the hospital filed this petition for certiorari and a motion to stay the Superior Court order. We granted the petition, issued the stay, and further directed the parties to brief the issue of the propriety of naming police officers as agents of the grand jury.

In support of its petition the hospital argues that compliance with the notification requirements of the CHCCIA by the grand jury would neither violate the secrecy requirements of Rule 6(e) nor subject the state to charges of criminal contempt. The hospital asserts that subpoenas that identify the names of patients and compel the production of medical records do not constitute matters occurring before the grand jury and thus are not within the scope of Rule 6(e) but that even if they were, the reasons that necessitate the imposition of secrecy over the grand jury proceedings do not apply. Conversely the state maintains that this case presents a direct conflict between the traditional rule of grand jury secrecy and the notification provisions of § 5–37.3–6.1 and that it cannot meet its obligations under the CHCCIA without violating its duties under Rule 6(e), thereby subjecting the disclosing grand juror or prosecutor to charges of criminal contempt. The state further asserts that in resolving this conflict, the Court must consider the policies underlying the requirement of grand jury secrecy and ultimately determine that the secrecy requirements of Rule 6(e) are paramount to the disclosure requirements of § 5–37.3–6.1.

After a careful review of Rule 6(e) and the recently amended CHCCIA, as well as the polices underlying the dictates of both provisions, we are of the opinion that the Legislature has made clear its intentions to protect the privacy rights of individuals with respect to their medical records and that the secrecy provisions of the grand jury proceedings are not threatened by giving these individuals notice and an opportunity to object to the disclosure of their records.

1. General Laws 1956 § 12–11.1–5.1, "Unlawful grand jury disclosure," states:

"(a) Any person who, when being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a police officer or a peace officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, or a public officer or public employee, obtains information in his or her official capacity and intentionally discloses, prior to the report of the grand jury on the matter, to another the nature or substance of any grand jury testimony, or any decision, result, or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his or her official duties or upon written order of the court shall be guilty of grand jury disclosure. Nothing in this section shall be construed to prohibit a witness from disclosing his or her own testimony.

"(b) Any person who violates any provision of this section shall be punishable by a fine of note exceeding five thousand dollars ($5,000), or imprisonment not exceeding one year, or both."

## II

## Analysis

We begin our analysis with an examination of the relevant provisions and note that when the Court is called upon to construe provisions of coexisting statutes, we attempt to follow the rule of statutory construction that provides that statutes relating to the same subject matter "should be construed such that they will harmonize with each other and be consistent with their general objective scope." *Blanchette v. Stone*, 591 A.2d 785, 786 (R.I.1991). *See also Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 148, 282 A.2d 584, 587 (R.I. 1971). This rule also applies to rules of court. *See* Singer, 2B *Sutherland Statutory Construction* § 51.02 (5th ed.1992)

### The Confidentiality of Health Care Communications and Information Act

The CHCCIA represents the General Assembly's attempt to create a physician-patient privilege that had not existed previously in the state of Rhode Island. *See State v. Guido*, 698 A.2d 729, 734 (R.I.1997); *In re Grand Jury Investigation*, 441 A.2d 525, 526–27 (R.I.1982). The act, which was first promulgated by virtue of P.L.1978, ch. 279 § 1, and was then referred to as the "Confidentiality of Health Care Information Act" (CHCIA), was intended " 'to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual.' " *In re Grand Jury Investigation*, 441 A.2d at 528. As originally drafted, § 5–37.3–4(a) of the CHCIA prohibited the release of a patient's confidential healthcare information without the patient's written consent, subject to certain enumerated exceptions listed in § 5–37.3–4(b). *Id.* Furthermore, § 5–37.3–6 of the CHCIA provided that this information was not subject to compulsory legal process.

In *Bartlett v. Danti*, 503 A.2d 515 (1986), however, this Court declared these sections of the CHCIA to be unconstitutional as violative of the separation of powers mandated by article 3 of the Rhode Island Constitution. 503 A.2d at 517. Specifically we stated that "in addition to interfering with the subpoena power of the judiciary, [the CHCIA] removes from the court's discretion the determination of the admissibility of otherwise relevant evidence." *Id.* Instead, the Court found that the CHCIA vested "the power to make such determinations in the hands of individual patients who can decide with impunity whether to permit access to such information." *Id.*

Later, in *State v. Almonte*, 644 A.2d 295 (R.I.1994), this Court examined a similar provision of the Privileged Communications Act, G.L.1956 § 9–17–24, which addressed communications to and information obtained by health-care providers. The *Almonte* Court noted that although this statute was enacted subsequent to our opinion in *Bartlett* and with an obvious intent to cure the constitutional infirmities of the CHCIA, it tracked "with little modification the language set forth in the earlier statute." *Almonte*, 644 A.2d at 298. The Court concluded that it must answer the questions presented by § 9–17–24 the same way it had answered the questions presented by §§ 5–37.3–4 and 5–37.3–6 of the CHCIA in *Bartlett* so as not to "allow the Legislature to create such a sweeping privilege with regard to health-care information as to cripple the ability of the Judiciary to try and determine a wide range of civil and criminal cases." *Almonte*, 644 A.2d at 298. We noted, however, that our opinion was in no way intended to prohibit the General Assembly from enacting a statute "dealing with confidential communications between a physician and a patient" but rather was simply stating that a statute could not unequivocally impinge upon the power of the Judiciary in carrying out its fact finding function. *Id.* at 299. *See also Washburn v. Rite Aid Corp.*, 695 A.2d 495, 498 (R.I.1997) ("neither *Bartlett* nor *Almonte* eradicated the underlying privilege created by such statutes").

With this pronouncement in mind, the Legislature once again undertook the task of fashioning a statute that would address the need for confidential communications between physician and patient while at the same time adhering to the authority of the Judiciary to access this type of information. After numerous amendments and revisions to

the CHCIA, on August 6, 1996 the General Assembly enacted the CHCCIA. *See* P.L. 1996, ch. 248 and P.L.1996, ch. 266. Significantly the amended act added subsection 6.1, which provides:

"(a) Except as otherwise provided in § 5–37.3–6, a health care provider or custodian of health care information may disclose confidential health care information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that:

(1) A copy of the subpoena has been served by the party on the individual whose records are being sought on or before the date the subpoena was served, together with a notice of the individual's right to challenge the subpoena; or, if the individual cannot be located within this jurisdiction, that an affidavit of that fact be provided; and

(2) Twenty (20) days have passed from the date of service on the individual and within that time period the individual has not initiated a challenge; or

(3) Disclosure is ordered by a court after challenge.

"(b) Within twenty (20) days after the date of service of a subpoena, an individual or his/her authorized representative may file a motion to quash the subpoena in the court in which the case is pending or, if no case is pending, in superior court. A copy of the motion to quash shall be served by the movant upon the party issuing the subpoena in accordance with the rules of civil procedure.

"(c) The party issuing the subpoena may file with the court such papers, including affidavits and other sworn documents, as sustain the validity of the subpoena. The movant may file with the court reply papers in response to the issuing party's filing. The court, upon receipt of these papers may proceed in camera. The court may conduct such proceedings as it deems appropriate to rule on the motion, but shall endeavor to expedite its determination.

"(d) The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual.

"(e) In determining whether the need for information clearly outweighs the privacy of the individual, the court shall consider:

(1) The particular purpose for which the information was collected;

(2) The individual's reasonable expectation of privacy in the information;

(3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;

(4) The effect of the disclosure on the individual's future health care;

(5) The importance of the information to the lawsuit or proceeding; and

(6) Whether the information is available from another source, including rule 35 of the rules of civil procedure.

"(f) If the court determines that a subpoena should issue, the information shall not be disclosed for any other purpose except as otherwise authorized by this chapter.

"(g) Nothing contained herein shall be construed to bar a health care provider or custodian of health care information from filing a motion to quash a subpoena for such information in accordance with the rules of civil procedure." Section 5–37.3–6.1.

In so doing, the General Assembly provided a means by which information could be disclosed in a judicial proceeding without obviating a patient's right to contest the disclosure.

 It is our opinion that this newly amended provision adequately addresses the heretofore recognized constitutional infirmities and strikes a permissible balance between a party's interest in maintaining the confidentiality of his or her personal health care records and the court's need to access relevant information. A presumption in favor of privacy exists, but the party seeking the disclosure may overcome this presump-

tion by demonstrating a particularized need that clearly outweighs the privacy interest of the interest of the individual. *See* § 5–37.3–6.1.

### Rule 6(e)

■ "The grand jury has always occupied a high place as an instrument of justice in our system of criminal law \* \* \*. \* \* \* It serves the 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.' " *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743, 751–52 (1983). "[C]oncern for the grand jury's dual function underlies the 'long-established policy that maintains the secrecy of the grand jury proceedings.' " *Id.* at 424, 103 S.Ct. at 3138, 77 L.Ed.2d at 752.

"Although the English forerunner of the modern grand jury served primarily as a prosecutorial and investigative arm of the Crown and was designed to enhance the government's authority, by the 17th century the grand jury had developed an equally important function— to safeguard citizens against an overreaching Crown and unfounded accusations. \* \* \* The tradition of secrecy surrounding grand jury proceedings evolved, at least partially, as a means of implementing this latter function by ensuring the impartiality of that body." *Butterworth v. Smith,* 494 U.S. 624, 629, 110 S.Ct. 1376, 1380, 108 L.Ed.2d 572, 580 (1990).

Rule 6(e) of the Superior Court Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy and provides in pertinent part:

"Disclosure of matters occurring before the grand jury, other than its deliberations or the vote of any juror where an indictment has not been returned, may be made to attorneys for the State for use in the performance of their duties. Otherwise, a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminary to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule."

■ In construing Rule 6(e), courts begin with the "fundamental policy of grand jury secrecy." *In re Grand Jury Investigation,* 642 F.2d 1184, 1190 (9th Cir.1981); *see also Douglas Oil Company of California v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156, 164 (1979); *State v. Carillo,* 112 R.I. 6, 11, 307 A.2d 773, 776 (1973). Accordingly, whenever a reviewing court is asked to determine whether a specific disclosure impermissibly pierces this veil of secrecy, that court must examine not only the need for and the character of the material sought but also the effect such disclosure would have on policies underlying grand jury secrecy. These policy considerations include (1) preventing the escape of those whose indictment may be contemplated, (2) ensuring the grand jurors the utmost freedom in their deliberations and preventing a defendant or target of an investigation from importuning them, (3) preventing the subornation of perjury and other witness tampering, (4) encouraging the free and untrammeled disclosure of relevant information, and (5) protecting the innocent defendant or target exonerated by the investigation from public disclosure of the fact that he or she was under investigation. *See In re Grand Jury Investigation,* 642 F.2d at 1191; *see also Carillo,* 112 R.I. at 11–12 n. 4, 307 A.2d at 776 n. 4. Nevertheless various courts have cautioned that the secrecy extended to grand jury proceedings is not absolute. "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Senate of the Commonwealth of Puerto Rico v. United States Department of Justice,* 823 F.2d 574, 582 (D.C.Cir.1987). *See also Butterworth,* 494 U.S. at 630, 110 S.Ct. at 1380, 108 L.Ed.2d at 580; *United States v. Stanford,* 589 F.2d 285, 291 (7th Cir.1978); *Carillo,* 112 R.I. at 11,

307 A.2d at 776. *See, e.g., In re Vescovo Special Grand Jury,* 473 F.Supp. 1335, 1336 (C.D.Cal.1979) (government cannot impose obligation of secrecy on bank employee with respect to grand jury subpoena requiring production of financial records of a bank customer).

■ With these principles in mind, we turn our attention to the issue squarely before the Court: Does notice to a target of a grand jury investigation or other person that a subpoena has been issued for his or her medical records, as well as an opportunity to object to the same, constitute disclosure of a "matter[ ] occurring before the grand jury" that serves to undermine the stated reasons for grand jury secrecy? A review of the underlying policies and relevant case law leads us to conclude that it does not.

■ To begin, we are not persuaded that a subpoena issued by the grand jury constitutes a "matter[ ] occurring before the grand jury." After an extensive review of both state and federal cases, we discern "no reading of Rule 6(e) so literal as to draw a 'veil of secrecy over ... all matters occurring in the world that happen to be investigated by a grand jury.'" *Senate of the Commonwealth of Puerto Rico,* 823 F.2d at 582. The courts have consistently held that "the touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation'" including "'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" *Id.; see also Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 869 (D.C.Cir. 1981); *Stanford,* 589 F.2d at 291. If the disclosure of the information will not reveal the inner workings of the grand jury investigation, Rule 6(e) is not applicable and the information may be disclosed. *See Stanford,* 589 F.2d at 291 ("[p]ersons may have a legitimate interest in documents so that disclosure to them does not constitute disclosure of matters occurring before the grand jury"). It is our opinion that the issuance of a subpoena and its service upon a person inherently is not a secret.

It is arguable the notification of a patient that a subpoena has issued for his or her medical records could reveal the nature and course of the grand jury investigation. *See Fund for Constitutional Government,* 656 F.2d at 869–70 (disclosure of potential witnesses and potential document exhibits could reveal strategy of investigation). We find this position unpersuasive, however, in that we can perceive no justifiable distinction between this instance and those in which an individual targeted by a grand jury investigation is subpoenaed and asked to provide a handwriting or voice exemplar, fingerprints, or hair sample. *See, e.g., In re Melvin,* 546 F.2d 1, 4 (1st Cir.1976) (subpoena for fingerprints and photographs permissible); *United States v. O'Kane,* 439 F.Supp. 211, 213 (S.D.Fla.1977) (compelling handwriting or voice exemplars permissible); *State v. Bertram,* 591 A.2d 14, 21–22 (R.I.1991) (compelling handwriting exemplar). Similarly Rule 3.8(f) of the Supreme Court Rules of Professional Conduct prohibits a prosecutor from issuing a subpoena to an attorney seeking disclosure of information obtained as a result of the attorney-client relationship without first obtaining judicial approval. We have declined to create an exception to this rule for grand jury investigations. *See In re Petition of Almond,* 603 A.2d 1087, 1088–89 (R.I.1992).

The perceived threat of revealing the nature and course of the investigation to a potential grand jury target is no different in this instance, and thus this argument cannot serve as the basis for denying disclosure. Further we are satisfied that in an appropriate case in which the risk of flight or other untoward consequences may arise from notice to the patient that his or her records are sought, the Presiding Justice of the Superior Court has the inherent authority to order the custodian to produce the records. *See Bartlett v. Danti,* 503 A.2d 515 (R.I.1986).

■ Moreover, we note that the grand jury's subpoena power is not without limits. *See United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 570 (1974). The grand jury "may consider incompetent evidence, but it may not itself violate a valid privilege, whether established

by the Constitution, statutes, or the common law." *Id.; In re Zuniga,* 714 F.2d 632, 636 (6th Cir.1983) (grand jury cannot violate a valid privilege). Without notice of the subpoenas being afforded to the individual patients, there would be no means by which to challenge the grand jury's use of its subpoena powers. *See People v. DeLaire,* 240 Ill. App.3d 1012, 183 Ill.Dec. 33, 610 N.E.2d 1277, 1283 (1993) (subpoena power is not unlimited so that respondent of subpoena has an opportunity to quash it before complying); *see also In Matter of Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991,* 959 F.2d 1158, 1163–64 (2nd Cir.1992) (custodian cannot assert Fifth Amendment privilege).

The state maintains, however, that our opinion in *Guido* is dispositive in this case and precludes the conclusion reached by this Court. Specifically the state posits that in passing on arguments similar to those in the instant case, the *Guido* Court rejected the defendants contentions that he had a legitimate expectation of privacy with respect to the medical records sought or that he was afforded any statutory protection by the CHCIA. In so doing this Court reasoned that the pertinent provisions of the CHCIA "could not constitutionally prohibit judicial access to these types of records." *Guido,* 698 A.2d at 734. In spite of the perceived similarities between the scenario presented in this case and that presented in *Guido,* however, we conclude that several key factual distinctions between the two cases undermine the state's reliance on *Guido.*

First, we note that *Guido* addressed § 5–37.3–4 of the CHCIA and not § 5–37.3–6.1 of the amended CHCCIA. Thus the analysis conducted in *Guido* is not relevant to this discussion. Furthermore unlike § 5–37.3–4 of the CHCIA, § 5–37.3–6.1 of the CHCCIA does not "prohibit judicial access to [a patient's medical] records," 698 A.2d at 734, but rather implements a procedure by which the individual patient can object to the disclosure.

Moreover, one of the major reasons we declined to find reversible error in *Guido* was that the prosecutor later obtained "a Rule 17(c) subpoena that was issued upon probable cause, after proper application to the Superior Court and after due notice had been given to defense counsel." *Guido,* 698 A.2d at 738. We are of the opinion that this is a significant distinction that should not be overlooked.

The state further argues that since "patients have neither a constitutional nor a statutory basis for resisting an otherwise legitimate grand jury subpoena duces tecum," it serves no purpose to afford them an opportunity to object to the subpoenas. This argument is flawed in two respects. First, *Guido* does not stand for the proposition that an individual does not possess any protected interest in his or her medical records, it simply states that there is no constitutional right of privacy. *Id.* at 734. With respect to a statutory right of privacy, the *Guido* court acknowledged the Legislature's attempt to create such a right and only took issue with the portion of the act that afforded the unrestricted right to deny access. *Id.* Furthermore, this argument presumes that the subpoena is otherwise valid. We cannot and shall not make any such presumptions and therefore conclude that the patient should be given the opportunity to challenge the validity of the subpoena. *See In re Zuniga,* 714 F.2d at 641 (no reasonable expectation that medical history will remain completely confidential does not mean that a person has no interest in protecting to a certain extent his or her medical records).

Accordingly we perceive no inconsistency between § 5–37.3–6.1 and Rule 6(e). We conclude that requiring conformance with the notification provisions of the CHCCIA by the grand jury does not effect an unconstitutional abrogation of and intrusion upon the grand jury's power to conduct a criminal investigation but rather strikes a balance between an individual's privacy interests and the state's interests in prohibiting illegal activity.

### Agency

Finally we address the issue of the grand jury's use of police officers as their agents. In *Guido* we expressed misgivings concerning this practice and issued cautionary directives against its continued use. *Guido,* 698 A.2d at 736–38. Nevertheless the grand

jury continues to utilize police officers (and other law enforcement officers) as its authorized representatives in serving subpoenas and also securing the return of service. Accordingly we requested that both parties brief and address the propriety of this practice. Unfortunately, after reviewing the briefs submitted by the parties and considering the oral arguments of counsel, we are even more troubled by the persistent utilization of law enforcement officers as agents of the grand jury and conclude this practice to be more pervasive than we were originally led to believe.

While acknowledging that the State of Rhode Island "does not have a rule or statutory procedure expressly authorizing grand juries to appoint police officers or other governmental personnel as their agents," the state relies upon Rule 17(d) of the Superior Court Rules of Criminal Procedure as authorizing a police officer to undertake the service of a subpoena issued by the grand jury and asserts that appointment by the grand jury as its authorized agent is a "long-standing practice in our jurisdiction." Rule 17(d) states:

> "A subpoena may be served by the sheriff, by the sheriff's deputy, by a constable, or by any other person who is not a party and who is not less than eighteen (18) years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to him the fee for one (1) day's attendance and the mileage allowed by law. When the subpoena is issued in behalf of the State or an officer or agency thereof, fees and mileage need not be tendered."

We note, however, that this provision merely authorizes the police to serve subpoenas and does not confer upon the officers the power to effectuate return of service or other broad investigatory powers commensurate with a grand jury proceeding. Furthermore, we have found nothing in our review of Rhode Island case law that would indicate this Court's approval of this unauthorized practice.

The state asserts, however, that the pre-1977 federal version of Rule 6(e), upon which our rule was modeled, has long been construed to permit precisely the disclosure that occurs when police officers are appointed agents of the grand jury and that as a practical matter, the grand jury would not be able to perform its investigative functions without extensive help from other law enforcement personnel in doing the legwork. We conclude, however, that the state's reliance on the original version of Rule 6(e) of the Federal Rules of Criminal Procedure is misplaced.

Federal Rule 6(e) has been amended by Congress numerous times since its adoption in 1944 and in its present form has little similarity to its Rhode Island counterpart. Only in its *amended* form does the rule provide for the disclosure to government personnel assisting in an investigation and only then after certain mandatory precautions have been taken to preserve grand jury secrecy, namely that the federal prosecutor "promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and * * * certify that the attorney has advised such persons of their obligation of secrecy under this rule." Fed.R.Crim.P. 6(e)(3)(B); *See also United States v. Hogan,* 489 F.Supp. 1035, 1038 (W.D.Wash.1980). In addition Federal Rule 6(e) provides that the person to whom matters are disclosed may utilize the material only to assist the attorney for the government "in the performance of such attorney's duty to enforce *federal criminal* law." (Emphasis added.) Fed.R.Crim.P. 6(e)(3)(B); *see also Stanford,* 589 F.2d at 292–93 (disclosure to FBI is permissible but only when grand jury swears in FBI as agent of grand jury and precautions are taken to preserve secrecy).

In stark contrast, Rule 6(e) of the Superior Court Rules of Criminal Procedure contains no means by which a police officer can be appointed an agent, no explicit authorization to disclose information to police officers, and no procedural safeguards to underline the importance of secrecy or limit the scope of the disclosure. Indeed at oral argument the state was unable to describe the oath these agents are given or to explain its origin, nor

was this Court provided with any evidence concerning the existence of any policies or procedures that govern the conduct of these agents. Accordingly we find reliance on federal precedent with respect to this issue to be inappropriate.

Having found no explicit statutory authority that would allow the utilization of police officers as agents of the grand jury, we must nevertheless determine whether it is a power inherent in the grand jury process. This Court has always recognized that law enforcement investigatory personnel are an integral part of a grand jury investigation. *In re Grand Jury Investigation,* 441 A.2d at 532. However, we have also expressed our concern that "a potential for danger exists whenever the grand jury's role is usurped or the grand jury is used to expand the investigating authority of the prosecuting attorney and police to circumvent constitutional safeguards." *Guido,* 698 A.2d at 737. Even though we observe that the in camera proceeding in this case occurred before our opinion in *Guido,* we take little comfort in that fact in light of the disclosures by the state at oral argument. Indeed neither the facts of this case nor the arguments submitted by the state in support of this practice have done anything to allay our fears.

■ First we point to the specific language used in these grand jury subpoenas. The subpoenas served upon the hospital indicated that the police officer serving the subpoena was an agent of the grand jury and that "these records should be given directly to him." This procedure is simply not allowed and results in police officers being armed with grand jury subpoenas demanding the immediate surrender of records that may be otherwise privileged. Once in receipt of the records, the officer has complete and unfettered use of them, including the prosecution of misdemeanor crimes without any participation of the grand jury or the Attorney General. We declare this practice to be well beyond the power of the grand jury and to be potentially abusive to the rights of citizens, resulting in a roving investigating commission that is the very antithesis of the purpose of the grand jury. *See In re P.I. Nwamu,* 421 F.Supp. 1361, 1365 (S.D.N.Y.

1976) (subpoena is not a warrant and does not provide agents the authority to demand compliance or seize subpoenaed items. The power to enforce a subpoena lies not with government agents but with the court).

Furthermore there is no procedure in place that addresses the risk that secret information will be disclosed in violation of Rule 6(e). As previously stated, the Superior Court has yet to adopt the same prophylactic procedures as its federal counterpart. *See* Fed.R.Crim.P. 6(e)(3)(B). The state's suggestion that a disclosing officer would be held in contempt pursuant to § 12–11.1–5.1 is of little assistance since the protections afforded by that statute are triggered not by the issuance of the subpoena but by the production of the material and the testimony *before* the grand jury.

Of greatest concern, however, is the demonstrated abuse of the grand jury subpoena power and the usurping of that power by the state's prosecutors. At oral argument it was disclosed that the Office of the Attorney General utilizes the grand jury for the issuance of subpoenas to obtain evidence concerning matters that are not before the grand jury and may never come before the grand jury. The prosecutor revealed to this Court that approximately 250 subpoenas were issued by the grand juries in Rhode Island for investigations and cases that are not grand jury matters. The state attempts to justify this practice on the grounds of management problems inherent in a procedure that limits grand jury subpoenas to grand jury matters, stating that this would give rise to the need for additional grand juries and staff to handle the increased volume. This practice, however, is simply unlawful and results in a total eradication of the independence of the grand jury and a merger of the identity of the grand jury with the prosecuting arm of the executive branch of government.

■ We remind the state's prosecutors that the General Assembly has not seen fit to authorize the Office of the Attorney General or the state's police departments to issue subpoenas for criminal investigations. "The subpoena power of the grand jury is designed for its own use, not to further independent investigations of the prosecutor or

police." *DeLaire*, 183 Ill.Dec. 33, 610 N.E.2d at 1284. Indeed it is important to remember that the process issued by the grand jury is the process of the court, not the prosecutor.

 Therefore we find ourselves constrained to declare that the grand juries of this state have no authority to appoint agents to recover documents in furtherance of investigations not related to the grand jury. We conclude that the issuance of so-called forthwith subpoenas for the immediate production of documents is more akin to the issuance of a warrant without the intervention of the neutral magistrate and is therefore impermissible. In addition, in circumstances in which a witness seeks to be excused from appearing before the grand jury and voluntarily surrenders records in lieu of a personal appearance, such materials are to be returned to the grand jury forthwith and a record is to be prepared and signed by the witness memorializing the transaction and the fact that the witness voluntarily waived his or her right to a personal appearance and right to contest the subpoena.

### III

### Conclusion

For the foregoing reasons the petition for certiorari is granted, and the order of the Superior Court is hereby quashed. The papers in this case may be remanded to the Superior Court with our decision endorsed thereon.