## In re GRAND JURY SUBPOENA.

### No. 97–423–M.P.

Supreme Court of Rhode Island.

March 22, 2000.

Aaron Weisman, Jane M. McSoley, Lauren Sadler Zurier, Alan Goulart, Assistant Attorney Generals, for Plaintiff.

John A. MacFadye, 3rd, Mortimer C. Newton, James E. O'Neil, Michael Goldberg, Carolyn Polowy, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on a petition for writ of certiorari filed by the petitioner, Myles Glatter (Glatter or petitioner), a licensed clinical social worker engaged in the practice of psycho-

logical counseling who specializes in counseling clients with sexual abuse issues. On April 28, 1997, Glatter was served with a subpoena *duces tecum* ordering him to disclose to a statewide grand jury "any and all records and notes of counseling sessions and meetings" that he had undertaken with a client. Glatter moved to quash the subpoena on numerous grounds, including an argument that the information sought by the grand jury consisted of counseling records of a client and was privileged from disclosure as a confidential communication under the Confidentiality of Health Care Communications and Information Act, G.L.1956 chapter 37.3 of title 5 (CHCCIA), and the Privacy Act, embodied in G.L.1956 § 9–1–28.1, and, that the records were protected by a common-law psychotherapist-client privilege as recognized by the United States Supreme Court. Glatter also raised several procedural deficiencies in the subpoena itself, including a direction to Glatter that "[t]he Grand Jury has ordered that the existence of this subpoena not be disclosed"[1] to anyone, including Glatter's client. The Attorney General objected to the motion to quash and argued that the grand jury was authorized to subpoena the sought-after records and that questions concerning the confidentiality of the records and the existence of any privilege against disclosure of the records may be raised only in subsequent proceedings in the Superior Court. The state further argued that to the extent a therapist-client privilege existed in this state, the privilege rested with the patient (who was not to be informed of the existence of the subpoena), and not the therapist.

An *in camera* hearing was conducted before a justice of the Superior Court at which Glatter's counsel argued, as he does before us on certiorari, that in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135

---

1. The subpoena also purported to excuse Glatter from appearing before the grand jury by directing him to surrender the records to a detective from the investigating police department. This practice was condemned in *In re*

*John Doe Grand Jury Proceedings,* 717 A.2d 1129 (R.I.1998), and the state herein subsequently confessed error with respect to this grand jury procedure.

L.Ed.2d 337 (1996), the United States Supreme Court recognized a common-law psychotherapist-client privilege that, "[l]ike the spousal and attorney-client privileges," 518 U.S. at 10, 116 S.Ct. at 1928, 135 L.Ed.2d at 344–45, is a necessary protection that is "rooted in the imperative need for confidence and trust," *id.* (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980)), between a licensed professional and his or her client and is grounded in the belief that effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears[,]" 518 U.S. at 10, 116 S.Ct. at 1928, 135 L.Ed.2d at 345, and thus serves important private interests of the patient and licensed professional. In *Jaffee,* the Court also declared that the psychotherapist privilege furthers an important public objective "by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Id.* at 11, 116 S.Ct. at 1929, 135 L.Ed.2d at 345.

■ The hearing justice denied the motion to quash, ruling that the grand jury was empowered to issue whatever subpoenas it deemed necessary in aid of its business, and that questions of privilege were appropriately raised at trial. Although the hearing justice recognized the applicability of CHCCIA, he nonetheless concluded that the motion to quash should be denied, citing this Court's decisions in *Washburn v. Rite Aid Corp.,* 695 A.2d 495 (R.I.1997); *State v. Almonte,* 644 A.2d 295 (R.I.1994); and *Bartlett v. Danti,* 503 A.2d 515 (R.I. 1986). We granted certiorari and issued a stay of enforcement of the subpoena. However, in the interim between the grant

of certiorari and oral argument in this case,[2] the grand jury that issued the subpoena has concluded its term and is no longer in existence. More importantly, the client whose records were sought pursuant to the subpoena has been charged with several counts of second-degree child molestation by way of criminal information,[3] without the benefit of the purportedly incriminating evidence contained in the counseling records. Finally, we have addressed several of the issues raised by the parties in this case and, although we are mindful that we declined to dismiss this case on mootness grounds when presented with the state's motion to dismiss and its limited confession of error, we are satisfied that the issues raised by the parties to this controversy are now moot.

In *State v. Guido,* 698 A.2d 729 (R.I. 1997), decided eleven days after the hearing justice's ruling in this case and in *In re John Doe Grand Jury Proceedings,* 717 A.2d 1129 (R.I.1998), we had occasion to pass upon the appropriateness of several of the grand jury procedures that were challenged by Glatter and rejected by the hearing justice. We declared the grand jury practice of issuing subpoenas for matters that were not under investigation by the grand jury to be inappropriate, and denounced the appointment by the grand jury of roving investigators armed with subpoenas authorizing the retrieval of records purportedly on behalf of a grand jury that was never intended to pass upon the matters about which the records were sought.

■ In light of this significant change of circumstances since the issuance of the writ, we are satisfied that the issues raised in this controversy are moot, and we therefore decline to decide the significant ques-

---

**2.** The National Association of Social Workers and the Rhode Island Chapter of the National Association of Social Workers have filed a joint amicus brief in this case and have urged us to adopt a privilege for communications between a clinical social worker psychotherapist and his or her client.

**3.** Although the name of Glatter's client was not disclosed during the course of these proceedings, the respondent has subsequently disclosed that the client has been charged with numerous counts of second-degree child molestation by way of criminal information.

tion of whether a common-law or statutory privilege exists for the confidential communications between a licensed psychotherapist and his or her client. Although we recognize that the issues raised in this controversy are quite likely to recur in the not too distant future (we have been advised that the state has requested a subpoena for the same records pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure for use in the underlying criminal case), we prefer to decide this important question of law aided by a more complete factual record.

However, in declaring the issues raised in this controversy moot, we are buoyed by the concession of error made by the state that the subpoena *duces tecum* at issue in this case should have been quashed in the first instance in accordance with *In re Doe, supra*. We are mindful that the state has raised G.L.1956 § 40–11–11 [4] as a complete statutory bar to the existence of any psychotherapist-client privilege in situations dealing with child abuse and sexual molestation. Glatter, in turn, has argued that the reporting requirement of § 40–11–11 represents a mandate for all the citizens of this state, without exception, to inform the Department of Children, Youth and Families (DCYF) of any reasonable suspicion or belief that a child or children have been or may be being abused or neglected so that DCYF may immediately investigate and take whatever measures it deems necessary to protect the child or children. Glatter suggests that this duty to report applies without regard to evidentiary privileges and is incumbent upon every health care provider, clergy member, educator and any other individual who becomes aware of actual or suspected abuse and neglect. We note that this issue was not mentioned by the state in the first instance before the hearing justice and was raised for the first time on certiorari before this Court.

In *In re Doe*, 717 A.2d at 1131, we recognized the unceasing attempts by the Legislature "to protect the privacy rights of individuals with respect to their medical records," and concluded that the secrecy of grand jury subpoenas must yield to an individual's statutory rights of notice and an opportunity to object to the disclosure of confidential health care information. Although we had previously invalidated attempts by the General Assembly to enact statutes that required a complete ban on the production of health care information through compulsory legal process in *Almonte* and *Bartlett*, both *supra*, in *In re Doe* we declared § 5–37.3–6.1,[5] the latest

---

4. General Laws 1956 § 40–11–11, entitled "Abrogation of privileged communications," provides:

"The privileged quality of communication between husband and wife and any professional person and his or her patient or client, except that between attorney and client, is hereby abrogated in situations involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required by this chapter, failure to cooperate with the department in its activities pursuant to this chapter, or failure to give or accept evidence in any judicial proceeding relating to child abuse or neglect. In any family court proceeding relating to child abuse or neglect, notwithstanding the provisions of chapter 37.3 of title 5, or the provisions of § 9–17–24, no privilege of confidentiality may be invoked with respect to any illness, trauma, incompetency, addiction to drugs, or alcoholism of any parent."

5. General Laws 1956 § 5–37.3–6.1 provides in relevant part as follows:

"**Court proceedings—Confidential health care information.**—(a) Except as provided in § 5–37.3–6, a health care provider or custodian of health care information may disclose confidential health care information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that:

(1) A copy of the subpoena has been served by the party on the individual whose records are being sought on or before the date the subpoena was served, together with a notice of the individual's right to challenge the subpoena; or, if the individual cannot be located within this jurisdiction, that an affidavit of that fact is provided; and

(2) Twenty (20) days have passed from the date of service on the individual and within

foray in the Legislature's unflagging efforts to create a workable rule of judicial privilege for health care information, to be "a means by which information could be disclosed in a judicial proceeding without obviating a patient's right to contest the disclosure." *In re Doe*, 717 A.2d at 1133. We held that the requirement that an individual whose health care information is sought to be disclosed be provided with notice and an opportunity to contest such disclosure, in light of a statutory presumption in favor of privacy of the records, is "a permissible balance between a party's interest in maintaining the confidentiality of his or her personal health care records and the court's need to access relevant infor-

mation." *Id.* We declared that for a party seeking production of confidential health care information to overcome this presumption, there must be a demonstration of a particularized need for the information that clearly outweighs the privacy interest of the person whose records are sought. Although we recognize that Glatter's petition rests upon § 5–37.3–6,[6] which requires an absolute ban on the disclosure of any confidential health care *communication* as that term is defined in § 5–37.3–3(3)(i),[7] we have yet to address the validity of such an absolute ban in connection with a judicial proceeding. *See Almonte* and *Bartlett*, both *supra*. We are satisfied

that time period the individual has not initiated a challenge; or

(3) Disclosure is ordered by a court after challenge.

"(b) Within twenty (20) days after the date of service of a subpoena, an individual or his or her authorized representative may file a motion to quash the subpoena in the court in which the case is pending or, if no case is pending, in the superior court. A copy of the motion to quash shall be served by the movant upon the party issuing the subpoena in accordance with the rules of civil procedure.

"(c) The party issuing the subpoena may file with the court these papers, including affidavits and other sworn documents, as sustain the validity of the subpoena. The movant may file with the court reply papers in response to the issuing party's filing. The court, upon receipt of these papers may proceed in camera. The court may conduct such proceedings as it deems appropriate to rule on the motion, but shall endeavor to expedite its determination.

"(d) The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual.

"(e) In determining whether the need for information clearly outweighs the privacy of the individual, the court shall consider:

(1) The particular purpose for which the information was collected;

(2) The individual's reasonable expectation of privacy in the information;

(3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;

(4) The effect of the disclosure on the individual's future health care;

(5) The importance of the information to the lawsuit or proceeding; and

(6) Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure."

6. Section 5–37.3–6, entitled "Court Proceedings—Confidential health care communication," provides in relevant part as follows:

"(a) Except as provided in subsection (b), confidential health care communications are not subject to compulsory legal process in any type of judicial proceeding, and a patient or his or her authorized representative has the right to refuse to disclose, and to prevent a witness from disclosing, his or her confidential health care communications in any such proceedings."

7. Section 5–37.3–3(3), "Definitions," defines a confidential health care communication as follows:

"(3)(i) 'Confidential health care communication' means a communication of health care information by an individual to a health care provider, including a transcription of any information, not intended to be disclosed to third persons except if those persons are:

(A) present to further the interest of the patient in the consultation, examination or interview;

(B) reasonably necessary for the transmission of the communication; or

(C) participating in the diagnosis and treatment under the direction of the health care provider, including members of the patient's family."

that sufficient procedural protections are now in place to guard against discovery of this material without the benefit of judicial intervention. In light of our mandate for a judicial determination of relevancy sufficient to overcome the statutory presumption in favor of confidentiality of health care *information* in instances in which a patient has moved to quash a subpoena pursuant to § 5–37.3–6.1, we are satisfied that questions relative to the discoverability of confidential health care *communications* pursuant to § 5–37.3–6, that are of necessity included within a patient's health care information records, will be fully litigated in the first instance in the Superior Court. We note that pursuant to § 5–37.3–6.1, and in accordance with our holding in *In re Doe,* Glatter's patient also must be afforded notice and an opportunity to be heard before process may issue for any confidential health care information.

Although we recognize the genuine concern of Glatter and the amici that a licensed psychotherapist may be required to disclose the possibility that counseling records may become the subject of a subpoena *duces tecum* and the chilling effect such a disclosure may have on a client's treatment,[8] we note that such an eventuality is speculative and is not the state of the law at this time. Moreover, we are satisfied that sufficient safeguards now exist to ensure appropriate judicial review of this issue, including certiorari to this Court should the question arise in an appropriate factual context. Obviously, questions concerning disclosure of information arguably protected by an evidentiary privilege are significant issues appropriately subject to certiorari review. *See Gilbert v. Travelers Indemnity Co.,* 117 R.I. 515, 368 A.2d 1236 (1977). However, our reluctance to decide them in an intellectual vacuum is of paramount importance.

For the foregoing reasons, the petition for certiorari is denied and the writ heretofore issued is quashed. The papers in this case may be remanded to the Superior Court with our decision endorsed thereon.

8. The amici brief raises the specter of a psychotherapist, who has an obligation of complete confidentiality with respect to all communications with his or her clients, being ordered to violate this code of ethics or be found in violation of state law.