DECISION
 FACTS AND TRAVEL
The matter before the Court involves a Motion to Quash a subpoena issued by the Rhode Island Attorney General on behalf of the Commonwealth of Massachusetts pursuant to G.L. 1956 Chapter 12-16 entitled "Attendance of Witnesses from Without State." Pursuant to G.L. 1956 § 12-16-3, Kenneth J. Fishman, Assistant Clerk Magistrate of the Norfolk County Superior Court, in the Commonwealth of Massachusetts, has certified that the Rhode Island Hospital Keeper of the Records Health Information Services (hereinafter simply "witness") is a material and necessary witness in the matter of Commonwealth (of Massachusetts) v. MatthewBimberg, Norfolk County Superior Court, Docket No. CR08-0782-001. Said certification and the application therefore indicates that the witness is in possession of certain medical records of Matthew Bimberg, an individual involved in a motor vehicle accident on or about July 5, 2008, within the Commonwealth of Massachusetts; and said medical records may contain evidence depicting injuries and blood alcohol readings of Mr. Bimberg, (hereinafter referred to as simply "Defendant" for ease of reference), as well as other evidence which *Page 2 
may implicate or exculpate the individual according to the laws of the Commonwealth of Massachusetts.
Pursuant to receipt of evidence of the above certification, the Attorney General has petitioned the Superior Court for an order requiring said witness to appear and show cause why an order should not be entered directing the witness to appear as a material witness before the court within the Commonwealth of Massachusetts and to produce records before said court according to the procedures set forth in and pursuant to law. An order requiring the witness to appear and show cause as described above was issued by the Superior Court on March 10, 2009. A hearing date was set for April 13, 2009.
Thereafter, pursuant to G.L. 1956 § 5-37.3-6.1, the Attorney General notified Rhode Island Hospital and Defendant, whose medical records were being sought, of the Attorney General's intent to request that individual's medical records via a Subpoena Duces Tecum served upon Rhode Island Hospital. A hearing was held on May 11, 2009 in the Superior Court on Rhode Island Hospital's Motion to Quash. Defendant appeared through counsel and successfully sought to have out of state counsel admitted pro hac vice. Rhode Island Hospital's Motion to Quash was denied on May 11, 2009, and the Court ordered said records to be turned over to the Court forin camera review regarding treatment by said Hospital of Defendant on July 5, 2008. The Court further ordered that Rhode Island Hospital, through its Keeper of the Records, need not appear out of state with said records due to hardship occasioned by such out of state travel. Defendant's Motion to Quash was continued to allow the Court to conduct an in camera review. *Page 3 
 In Camera Review
The Court was made aware of the allegations per the filings within the instant miscellaneous petition and reviewed said records incamera. The Court, while not knowing all of the substantive allegations or potential implications of the records as they relate to this case, finds that the records are relevant.
 Defendant's Motions To Quash the Subpoena
Counsel for Defendant originally appeared before the Court on May 21, 2009 on his Motion to Quash, and the matter was continued several times.[1] Defendant presently advances his Fourth Amended Motion to Quash the subpoena. Defendant has also supplied the Court with a "Supplemental Memorandum Re: State's Objection to Motion to Quash Subpoena." Defendant advances several arguments in support of his motions. At the outset, the arguments include:
 • Defendants records are privileged under the Confidentiality of Health Care Communications and Information Act embodied in Chapter 37.3 of Title 5 of the Rhode Island General Laws. (hereinafter "CHCCIA")
 • Law enforcement access to Defendants records may only be granted in very narrow circumstances pursuant to RIGL 5-37.3-6 (b) (6) and those circumstances are not present in this case.
 • Defendant was in custody during the time he was in the hospital and not competent to grant or deny permission to or for the taking and testing of his blood.
 • Disclosure would violate Defendant's confrontation rights under Crawford v. Washington, 541 U.S. 36 (2004) or Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (June 25, 2009).
 • This Court should allow the Rhode Island Supreme Court to interpret the constitutionality of the Confidentiality of Health Care Communications and Information Act in the instant context in the first instance.
 • In any event, Defendant's privacy interest outweighs the state's need for disclosure. *Page 4 
 Choice of Law Issue
In the instant case, the relative interests of the State of Rhode Island and the Commonwealth of Massachusetts are not specifically addressed within the CHCCIA. The matter before this Court involves analysis under CHCCIA within the context of a subpoena for medical records pursuant to G.L. 1956 Chapter 12-16 entitled "Attendance of Witnesses from Without State." The pending criminal matter is to be tried within the Commonwealth of Massachusetts. In State v.Briggs, 756 A.2d 731 (R.I. 2000), the Rhode Island Supreme Court reaffirmed that the "procedural law of the forum state applies even if a foreign state's substantive law is applicable."Id. at 735 citing Israel v. National Board of Young Men'sChristian Association,117 R.I. 614, 620, 369 A.2d 646, 650 (1977). Given that no judgment in either state has issued yet, the decision as to which state is the forum state may amount to an exercise in semantics. TheBriggs court announced that the proper approach in resolving any conflict of law involved a resort to the "interest-weighing approach" which employed five guidelines in its application.Id. at 739 citing Victoria v. Smythe,703 A.2d 619, 620 (R.I. 1997) (per curiam). The five guidelines are (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advance of the forum's governmental interest, and (5) application of the better rule of law.Briggs at 740.
There is a dearth of precedent addressing the precise factual context of the instant matter regarding the choice of law issue. Unlike Briggs, where Rhode Island was clearly the forum state, and the foreign state was New Hampshire, the instant matter involves a different situation. The underlying criminal matter will be tried within the Commonwealth of Massachusetts, arguably making that state the forum state. The State *Page 5 
of Rhode Island would appear to be the foreign state whose substantive law should apply in the context of the instant situation.
While the five guidelines have not been addressed by either side, Defendant has suggested, in his various Memoranda, that the Commonwealth of Massachusetts is the actual forum state (whose law will ultimately determine admissibility at trial if the records are released), while Rhode Island should be considered the foreign state and thus, the substantive law of Rhode Island should apply relative to making the records available to the Commonwealth of Massachusetts. (See Defendant's Fourth Amended Motion to Quash Subpoena at pp. 2 and 3.) The State of Rhode Island Attorney General, while not specifically addressing the five guidelines, has suggested in his brief that the "applicable law" is the CHCCIA currently embodied in Chapter 5-37.3 of the Rhode Island General Laws. (See State of Rhode Island's Objection to Defendant's Fourth Amended Motion to Quash Subpoena at Part IV, Applicable Law, beginning on p. 5 thereof).
Given that the action has been filed in the State of Rhode, the medical records were subpoenaed in this state pursuant to the CHCCIA, the treatment of Defendant was rendered in this state, and that the hospital, whose records were in fact subpoenaed, is a Rhode Island entity subject to sanctions for any violation of CHCCIA, it cannot be said that the State of Rhode Island has only a casual interest in the matter. Furthermore, the hospital has already argued a Motion to Quash before this Court, and this Court has already conducted an in camera review. The CHCCIA has been amended several times in the State of Rhode Island, and different decisions of the Rhode Island Supreme Court have found various portions of the act unconstitutional at various times. Lastly, the Rhode Island Supreme Court previously had an opportunity to consider the issue of *Page 6 
release of medical records within the context of an action initiated pursuant to G.L. 1956 Chapter 12-16 entitled "Attendance of Witnesses from Without State" (albeit in a different factual context) in the case of In reWesterly Hospital, Rhode Island Supreme Court No. 2007-363-Appeal, (Order of the Supreme Court January 7, 2009). However, the records had already been transferred out of state and the Rhode Island Supreme Court declined to review the merits of the case on mootness grounds. Based on the foregoing, this Court will apply the Rhode Island law in the instant case.
 ANALYSIS Defendant's Claim of Privilege
Defendant argues to this Court that his medical records are privileged under G. L. 1956 § 5-37.3-4(a) of the CHCCIA and he has not given his consent for their release.
That specific section provides in relevant part:
 5-37.3-4 Limitations on and permitted disclosures. — (a) Except as provided in subsection (b) of this section or as specifically provided by the law, a patient's confidential health care information shall not be released or transferred without the written consent of the patient or his or her authorized representative, on a consent form meeting the requirements of subsection (d) of this section. . . .
He further argues that under the ruling of our Supreme Court inWashburn v. Rite Aid Corp., 695 A2d 495 (R.I. 1997), that the earlier Supreme Court rulings under Bartlett v. Danti,503 A.2d 515 (R.I. 1986), and State v. Almonte,644 A.2d 295 (1994) did not eradicate the privilege contained in the CHCCIA. In Washburn, Justice Flanders, writing for the Supreme Court, specifically stated:
 However, neither Bartlett nor Almonte eradicated the underlying privilege created by such statutes. This privilege generally protects a person's confidential health-care records from being disclosed to unauthorized third parties unless the disclosure falls within one of the statutory exceptions. Although these records must be subject to *Page 7 
compulsory legal process to avoid the separation-of-powers problem discussed in Bartlett and Almonte, the privilege does not evaporate merely because confidential health-care records can be or have been duly subpoenaed in connection with a court proceeding. On the contrary, the privilege continues to exist, and the documents that are privileged still cannot be disclosed (without the privilege holder's consent) except by strictly complying with the requirements of any compulsory legal process that may be issued with respect to such documents-and then only according to the procedures applicable to that process. Washburn at 498.
Defendant directs the Court's attention to the phrase, "unless the disclosure falls within one of the statutory exceptions" contained in the above passage. Counsel argues that the "statutory exceptions" are enumerated in § 5-37.3-4 (b) which contains some twenty-four enumerated exceptions, none of which are applicable to the instant case, and also § 5-37.3-6 (b) which contains six listed exceptions. Defendant maintains that of the six listed exceptions in § 5-37.3-6 (b), the only exception that could possibly apply to the instant case is that contained in § 5-37.3-6 (b)(6). The relevant portions of that particular section read as follows:
 § 5-37.3-6 Court proceedings — Confidential health care communication. — (a) Except as provided in subsection (b) of this section, confidential health care communications shall not be subject to compulsory legal process in any type of judicial proceeding, and a patient or his or her authorized representative has the right to refuse to disclose, and to prevent a witness from disclosing, his or her confidential health care communications in any judicial proceedings.
 (b) The exemption from compulsory legal process and the privilege provided in subsection (a) of this section does not apply: . . .
 (6) When, in any court proceeding, civil or criminal, the issue arises as to the ingestion by an individual of intoxicating liquor, toluene, or any controlled substance as defined in chapter 28 of title 21, upon motion by any party to that proceeding, and it is demonstrated to the court that the confidential health care information is relevant and material, that court may issue, in its *Page 8 
discretion, an order compelling production of that information, if any, which demonstrates the presence of alcohol in a concentration of one tenth of one percent (.1%) or more by weight or the presence of a controlled substance in that individual, as shown by a chemical analysis of a blood, breath, or urine sample, if this test was originally performed at the direction of a law enforcement official in accordance with § 31-27-2.
 Custody Issue
Insofar as may be relevant to this proceeding, counsel for Defendant has brought certain facts to the Court's attention that counsel has gleaned from his own review of Defendant's medical records.[2] Counsel correctly indicates that the medical records contain indications that Defendant was in custody during the time he was at Rhode Island Hospital. This Court's own review of the records depicting what observations were made by hospital staff after Defendant arrived at Rhode Island Hospital on July 5, 2008 at 3:33 A.M. indicates the following insofar as may be relevant to the custody issue:
 05:14 (Time) "assessment"
 "Patient arrived to exam room #9 via stretcher escorted by Mass State Trooper. Pt handcuffed to stretcher; pt sleepy by arousable (sic); pt placed on telemetry denies. . .(omitted); pt does admit . .(omitted) . . . Pt also states . . .(omitted) . . . Pt does not remember . .(omitted). . ."
 07:20 (Time) "outcome"
 "Mass. state trooper read patient his rights at bedside and RI state police here to take patient into custody"
 06:57 (Time) "interventions"
 "Patient has correct armband on for positive identification. Bed in low position. Call light in reach. Placed in gown. Side rails up X2 police at bedside with patient."
 06:56 (Time) "outcome" "Discharge ordered by MD" *Page 9 
 07:20 (Time) "outcome"
 "Discharged to police custody. Condition stable. Discharge instructions given to patient, police by RN. Demonstrated understanding of instructions. (omitted) . . ."
 (emphasis added in above)
Insofar as may be relevant to the instant proceeding, this Court finds that the patient, (Defendant), was in custody during his time at Rhode Island Hospital on July 5, 2008. As to his claim that he was not competent at the time to grant or deny permission for the taking of his blood, this Court finds that claim somewhat refuted by certain records of conversations he engaged in with hospital staff as noted in the 05:14 assessment depicted above, as well as later conversations.
It has been stipulated on the record in the instant matter on at least two (2) occasions that any blood test or other tests done at Rhode Island Hospital were not performed at the direction of a law enforcement official, and further, said tests were not performed in accordance with G.L. 1956 § 31-27-2. This Court specifically finds that Defendant's blood was not taken at the direction of law enforcement officers and said tests were not performed at the direction of law enforcement officers. Therefore, Defendant argues that the records are still privileged and not subject to disclosure.
 Washburn Distinguished
The Washburn case was a civil action that dealt with an actual unauthorized disclosure of a plaintiff's confidential health care records. A subpoena had been issued directing the pharmacy to bring certain records to the Family Court for a hearing. Rather than comply with the procedure, the pharmacy unilaterally disclosed the records to an unauthorized third party. The unauthorized third party was the attorney for the party that had subpoenaed the records. The plaintiff eventually sued claiming a violation of *Page 10 
CHCCIA and her right to privacy. Summary judgment entered for the pharmacy on all of plaintiff's counts. In reversing the summary judgment for the pharmacy on the privacy count, the Supreme Court was cognizant that an unauthorized disclosure was clearly alleged.
In the instant matter, the Commonwealth seeks simply toobtain the records pursuant to two separate and distinct statutory procedures.[3] (emphasis added). The ability of the Court to simply issue the subpoena and obtain the records appears to be addressed in both Bartlett v. Danti, supra, andState v. Almonte, supra. See Bartlett,503 A.2d at 518 providing:
 We conclude that § 5-37.3-6 is violative of article 1, section 5 [of the Rhode Island Constitution]. We find that § 5-37.3-6, absent the patient consent mandated by § 5-37.3-4(a), precludes litigants from obtaining and introducing material evidence, thereby preventing litigants from effectively presenting their claims before the trier of fact.
The Supreme Court recited the above passage again in the case ofState v Almonte, supra, and also added:
 We believe that our earlier decision was sound and necessary to prevent legislative encroachment upon the judicial function. We do not doubt the power of the Legislature to create a privilege as a matter of substantive law. See Privileged Communications to Clergymen, G.L. 1956 (1985 Reenactment) § 9-17-23. However, we cannot allow the Legislature to create such a sweeping privilege with regard to health-care information as to cripple the ability of the Judiciary to try and determine a wide range of civil and criminal cases. See 644 A.2d at 298.
Notwithstanding the dicta in Washburn, our Supreme Court, as recently as the year 2000, in the case of In re Grand JurySubpoena, 748 A.2d 821 (R.I. 2000), was confronted with a petition for a writ of certiorari filed by a licensed clinical social worker *Page 11 
engaged in the practice of psychological counseling and specializing in the counseling of clients with sexual abuse issues. Petitioner sought certiorari to review a denial of his motion to quash a grand jury subpoena in the Superior Court. While the Supreme Court found the matter to be moot, [4] it did consider some of the claims of the petitioner and thereafter indicated that the Supreme Court had yet to address the validity of an absolute ban on such records in connection with a judicial proceeding. The Court specifically indicated that the matter should be litigated in the Superior Court in the first instance. Id., at 824 — 826.
Given that this Court finds that Defendant's blood was not taken at the direction of law enforcement officers, Defendant's argument is also undercut by the Supreme Court's holding inState v. Guido, 698 A.2d 729, 734 (1997) (rejecting the argument that a blanket prohibition which would "permit a defendant to hide evidence of his intoxication from legal process subject only to his whim . . .would constitute a serious impediment to the Judiciary's ability to carry out its function in a large variety of criminal cases."). Given that the accident in Guido occurred in 1993, and the Act was amended effective August 6, 1996, (1996 Public Laws chapter 248), the Court will now focus on the effect of the amendments to the Act. The 1996 amendments to the Act added an entire subsection to the Chapter. New subsection 6.1 provided as follows:
 5-37.3-6.1 Court proceedings — Confidential health care information. — (a) Except as provided in § 5-37.3-6, a health care provider or custodian of health care information may disclose confidential health care information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that: *Page 12 
 (1) A copy of the subpoena has been served by the party on the individual whose records are being sought on or before the date the subpoena was served, together with a notice of the individual's right to challenge the subpoena; or, if the individual cannot be located within this jurisdiction, that an affidavit of that fact is provided; and
 (2) Twenty (20) days have passed from the date of service on the individual and within that time period the individual has not initiated a challenge; or
 (3) Disclosure is ordered by a court after challenge.
 (b) Within twenty (20) days after the date of service of a subpoena, an individual or his or her authorized representative may file a motion to quash the subpoena in the court in which the case is pending or, if no case is pending, in superior court. A copy of the motion to quash shall be served by the movant upon the party issuing the subpoena in accordance with the rules of civil procedure.
 (c) The party issuing the subpoena may file with the court these papers, including affidavits and other sworn documents, as sustain the validity of the subpoena. The movant may file with the court reply papers in response to the issuing party's filing. The court, upon receipt of these papers may proceed in camera. The court may conduct any proceedings as it deems appropriate to rule on the motion, but shall endeavor to expedite its determination.
 (d) The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual.
 (e) In determining whether the need for information clearly outweighs the privacy of the individual, the court shall consider:
 (1) The particular purpose for which the information was collected;
 (2) The individual's reasonable expectation of privacy in the information;
 (3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;
 (4) The effect of the disclosure on the individual's future health care;
 (5) The importance of the information to the lawsuit or proceeding; and *Page 13 
 (6) Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure.
 (f) If the court determines that a subpoena should issue, the information shall not be disclosed for any other purpose except as authorized by this chapter.
 (g) Nothing contained in this section shall be construed to bar a health care provider or custodian of health care information from filing a motion to quash a subpoena for this information in accordance with the rules of civil procedure.
Our Supreme Court has ruled on this new subsection in the case ofIn re Doe, 717 A.2d 1129 (R.I. 1998). In Doe, the Supreme Court declared that 5-37.3-6.1 clearly set forth the legislative intent to protect individuals' privacy rights with respect to their medical records, and did so without threatening the secrecy provisions of grand jury proceedings. Id. at 1131. The Court specifically held that a grand jury must comply with the notice provisions of the new subsection even if the individual whose records are sought is the target of the investigation.Id. at 1134-36. The Supreme Court also noted that theGuido case dealt with subsection 4 of the Act and not section 6.1. Id. at 1136.
Acknowledging that the instant case does not involve a grand jury proceeding, Defendant's argument is still undercut by the holdings in State v Collins, 679 A.2d 862 (1996) and State vPresler, 731 A.2d 699 (1999). In the Collins case, the defendant refused to submit to any test requested by police. The results of blood tests done by hospital personnel were admitted at his trial over his objection. In upholding an earlier precedent, the Supreme Court noted:
 "We are of the opinion that the purpose of § 31-27-2 is to render inadmissible the results of chemical tests carried out under the supervision, direction, and authority of the police or law-enforcement officials in the event that the requirements of that statute are not satisfied. Therefore, we hold that the statute is inapplicable to the facts in the instant *Page 14 
case in which chemical tests were administered by hospital personnel in the ordinary course of administering medical treatment." Id. at 865.
The accident in Collins occurred on August 3, 1990, well before new subsection 5-37.3-6.1 was enacted. The Presler
case was decided on June 11, 1999, almost three full years after the August 6, 1996 effective date of 1996 Public Laws Chapter 248, which added new subsection 6.1 to CHCCIA along with other changes. However, the accident inPresler occurred on March 13, 1994, before new subsection 6.1 had been enacted. Presler, supra,731 A.2d at 700. In upholding Defendant Presler's conviction, the Rhode Island Supreme Court noted it had reversed a suppression order in an earlier proceeding where the suppression order had been premised on violations of G.L. 1956 § 31-27-2. The Supreme Court noted that in its earlier Order that it had previously held that the statute only applied to "blood-taking initiated by the state, including police officers, for the purpose of possible prosecution."Id. at 702.
Based on the foregoing, this Court declines to quash the subpoena on the grounds that the Defendant was in custody at the time his blood was taken and he was not competent to give his consent thereto, and furthermore that the blood was not taken in accordance with the procedures set forth in G.L. § 5-37.3-6 (b) (6). The motion is denied on those grounds.
Health Care "Information" vs."Communications" — Other Amendments in 1996[5]
The Public Law amendments in 1996 also made other subtle changes to the Act. Section 6, entitled, "Legal process — Court proceedings", appeared to distinguish health care "communications" from health care "information". The new section required only that health care "communications" were NOT subject to compulsory legal process in any *Page 15 
type of judicial proceeding. The amendment specifically eliminated health care "information" from the materials that were NOT subject to compulsory legal process in any type of judicial proceeding. The 1996 amendments also added specific definitions for "Confidential health care communication" and "Confidential health care information."
"Confidential health care communication" means a communication of health care information by an individual to a health care provider, including a transcription of any information, not intended to be disclosed to third persons except if those persons are:
(A) present to further the interest of the patient in the consultation, examination or interview;
(B) reasonably necessary for the transmission of the communication; or
(C) participating in the diagnosis and treatment under the direction of the health care provider, including members of the patient's family. See section 5-37.3-3.
"Confidential health care information" means all information relating to a patient's health care history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has treated the patient. See section 5-37.3-3 (ii)
 Court's Findings Regarding Subsection 6.1 (d) and(e)
This Court finds that the blood alcohol test results in the instant case amount to "confidential health care information." While this Court has made certain findings on the record during a hearing on May 21, 2009, (See
Tr. P. 10 beginning at Line 8 to P. 11, Line 19) the Court has stated it will revisit those findings when the case was last argued on December 18, 2009. The Court has already found that the records are relevant. (See In Camera Review, supra). The Court is now required to evaluate whether the need for *Page 16 
information clearly outweighs Defendant's privacy interest. In making that determination, the Court is required to evaluate the factors contained in subsection (e).
 (1) The particular purpose for which the information was collected — the Court has already found that Defendant's blood was not taken at the direction of law enforcement officers and said tests were not performed at the direction of law enforcement officers.
 (2) The individual's reasonable expectation of privacy in the information — The Rhode Island Supreme Court has already held that a Court could permissibly compel the disclosure of health care information under § 5-37.3-6.1. In re Doe, 717 A2d at 1133-1134.
 (3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual — the information's use as evidence at trial will have an effect on Defendant's reputation and perhaps even liberty. However, in Guido, supra at 734, the Supreme Court rejected the argument that a blanket prohibition which would "permit a defendant to hide evidence of his intoxication from legal process subject only to his whim . . .would constitute a serious impediment to the Judiciary's ability to carry out its function in a large variety of criminal cases."
 (4) The effect of the disclosure on the individual's future health care — there is no evidence that disclosure would have any effect on Defendant's future health care. *Page 17 
 (5) The importance of the information to the lawsuit or proceeding — the Court finds the information is very important — the Commonwealth of Massachusetts will be required to prove Defendant's intoxication beyond a reasonable doubt.
 (6) Whether the information is available from another source — With regard to the blood test results, this Court finds that that they are not available from any other source and no evidence to controvert that conclusion exists on the record.
With regard to the "confidential health care information" (blood test results), the Court finds that the need for information clearly outweighs Defendant's privacy interest; and the Court denies the Motion to Quash on the grounds that Defendant's privacy interest outweighs the need for such information.
 "Confidential Health CareCommunications"
The Court next considers "confidential health care communications" separate from "confidential health care information" because the particular evidence may be different. (ie. Information as to the identity of the driver may be included in this class of data defined as "communications"). As previously stated, the "confidential health care communications" are defined as:
a communication of health care information by an individual to a health care provider, including a transcription of any information, not intended to be disclosed to third persons except if those persons are:
 (A) present to further the interest of the patient in the consultation, examination or interview;
 (B) reasonably necessary for the transmission of the communication; or *Page 18 
 (C) participating in the diagnosis and treatment under the direction of the health care provider, including members of the patient's family. (emphasis added)
Given the use of the term "health care information" in the above definition, the Court next refers to that definition — ". . .all information relating to a patient's health care history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has treated the patient."
 "Findings Relative to Confidential Health CareCommunications"
This Court finds that certain communications located within the records are relevant to the proceedings pending in the Commonwealth of Massachusetts. However, the Court finds that the communications are not "Confidential health care communications" within the meaning of CHCCIA because the communications were not made relative to Defendant's "health care history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has treated the patient." Section 5-37.3-3 (ii). Therefore, the Court need not reach the issue of whether the information contained in such "communications" is available from another source. While Defendant has not specifically articulated these grounds, his blanket claim of privilege and the process of statutory construction would seem to necessitate this analysis. The Motion to Quash the subpoena on the grounds that certain communications are confidential is denied.
 Defendant's Confrontation Rights
Defendant next argues that his Motion to Quash should be granted based upon the rationale set forth in the cases of Crawford v.Washington, 541 U.S. 36 (2004) (implicating theSixth Amendment right to confront the witnesses) andMelendez-Diaz v. Massachusetts,129 S.Ct. 2527 (2009) (toxicology reports confirming a substance is a *Page 19 
controlled substance may no longer be admitted without accompanying testimony of the analyst), and also because of the statutory confrontation right contained in § 5-37.3-6.3 (a), which specifically states in relevant part, "Nothing in this chapter shall be construed to interfere with the rights to confrontation . . . secured to a defendant pursuant to the state and federal constitutions." The Crawford and confrontation issues generally involve a decision made at time of trial relating to whether certain hearsay evidence should be admitted which may violate a defendant's Sixth Amendment right of confrontation. That decision must be made at the time the prosecution seeks to introduce the evidence at trial and is premature at this time. The decision as to whether to admit the evidence at trial in the Commonwealth would be subject to that particular Justice's discretion in the Commonwealth. The Motion to Quash the subpoena is denied on those grounds.
 Separation of Powers
Defendant next argues that this Court should not deny his Motion to Quash on "separation of powers" grounds. This argument seems to be asking this Court to ignore the rationale and analysis of the Rhode Island Supreme Court developed over the Bartlett,Almonte, Guido, In re Doe, and In re Grand JurySubpoena decisions, supra. In five (5) lines in his memorandum, Defendant asks this Court to ignore the principle of stare decicis and hold that "privacy rights should not be abrogated on a separation of powers theory." No new good faith basis for reversing or modifying the existing law is contained in that particular section of the memorandum. The Motion to Quash the subpoena is denied on those grounds. *Page 20 
 Constitutionality of Statute
Defendant lastly suggests to this Court that it should not decide the constitutionality of the particular statute in the first instance but should submit the same to the Rhode Island Supreme Court on an agreed statement of facts. This request ignores certain provisions of In re Grand Jury Subpoena,748 A.2d 821 (R.I. 2000), discussed above, wherein the Rhode Island Supreme Court specifically indicated that the matter should belitigated in the Superior Court in the first instance.Id., at 824 — 826. (emphasis added). The Motion to Quash the subpoena is denied on those grounds.
 Conclusion
Defendant's Motion to Quash the subpoena is denied for the reasons set forth above. The records will be resealed and sent directly to Kenneth J. Fishman, Assistant Clerk Magistrate of the Norfolk County Superior Court, in the Commonwealth of Massachusetts, at 650 High Street, Dedham, MA. 02026 for the purpose of directing them directly to the Superior Court Justice assigned to preside over the case of Commonwealth v. Matthew Bimberg, Norfolk County Superior Court, Docket No. CR08-0782-001.
Counsel shall prepare an order consistent with the above Decision.
[1] The Court originally denied the Motion to Quash and entered a protective order based upon the mistaken belief by the Court and all parties that the records were being sought for a grand jury proceeding within the Commonwealth of Massachusetts. The records were, in fact, being subpoenaed for trial. Once the error was discovered, the protective order was vacated; and a hearing was scheduled on the Motion to Quash.
[2] It appears that counsel may have obtained Defendant's medical records by virtue of a release executed by his client.
[3] Chapter 12-16, Attendance of Witnesses from Without State, and Chapter 5-37.3, Confidentiality of Health Care Communications and Information Act.
[4] The Attorney General had already commenced prosecution by an information on slightly different charges and the grand jury had already concluded its term thereby eliminating the need to appear.
[5] 1996 Public Laws Chapter 248 can be viewed online at http://www.rilin.state.ri.us/PublicLaws96/law96248.htm last viewed December 30, 2009.