**STATE**

v.

**Joseph SANTOS.**

**No. 2008–99–C.A.**

Supreme Court of Rhode Island.

June 16, 2010.

---

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

Marie T. Roebuck, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Joseph Santos, appeals from his conviction on two criminal counts arising out of his involvement in a tragic motorcycle accident. After a six-day jury trial, the defendant was sentenced to fifteen years, thirteen years to serve, on one count of driving under the influence, death resulting, in violation of G.L.1956 § 31–27–2.2, and ten years, two years to serve, on a second count of driving so as to endanger, death resulting, in violation of § 31–27–1. The sentences were to be served consecutively. On appeal, the defendant contends that the trial justice erred in denying the defendant's motion to suppress his blood-alcohol-level-test results. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On July 30, 2005, defendant was involved in a serious motor-vehicle accident that resulted in the death of Susan Renaud, who was a passenger on his motorcycle that evening. After a high-speed collision with a sport-utility vehicle, defendant and Ms. Renaud were taken to Rhode Island Hospital for treatment, where defendant underwent a blood-alcohol-level test. According to the doctor who treated defendant, such testing was standard hospital procedure, and he was not ordered by the state police to perform the test. The test revealed that defendant's blood-alcohol level was more than twice the legal limit. At the hospital, a state trooper had defendant sign multiple consent forms approving the release of his medical records.

Subsequently, defendant was arrested and charged with driving under the influence with death resulting, driving to endanger with death resulting, and driving under the influence. The charge of driving under the influence later was dismissed, but prosecution continued on the remaining counts.

On May 4, 2007, before trial began, a subpoena duces tecum was issued to Rhode Island Hospital requesting defendant's medical records. That same day, defendant filed a motion to suppress the blood-alcohol-level-test results contained in his medical records. The trial justice held extensive hearings on the suppression motion on May 7 and May 8, 2007. Eight witnesses testified at the suppression hearing: (1) Edith Chace, a clerical group leader in the medical-records division at Rhode Island Hospital; (2) Scott Hartwell, the state trooper who responded to the scene of the accident and had defendant sign the consent forms at the hospital for the release of his medical records; (3) Jeffrey Zack, M.D., the emergency room physician who treated defendant on the night of the accident; (4) Elicia Poland, who observed defendant's driving on the night of the accident and allegedly spoke with him at the scene; (5) Arthur Houle, III, a witness to the accident; (6) Kendra Renaud, Susan Renaud's sister-in-law, who spoke with defendant at the hospital; (7) Karon Terry, a longtime friend of Susan Renaud; and (8) defendant himself.

Ms. Chace, a clerical group leader at Rhode Island Hospital employed in the medical-records division, testified that she received the state's request for defendant's medical records as well as copies of the release forms signed by defendant and that she provided a copy of the requested documents to the state immediately before taking the witness stand. The trial justice noted, for the record, that the documents

had been sealed and that the trial justice had broken the seal in front of the attorneys for both parties in her chambers. Ms. Chace further testified that defendant never withdrew his consent to the release of his records.

At the conclusion of testimony on May 8, 2007, the trial justice ruled that defendant had given his consent to the release of records to the Rhode Island State Police intelligently, knowingly, and voluntarily. The trial justice relied primarily on the testimony of Dr. Zack, defendant's treating physician, who testified to defendant's physical condition on the night of July 30, 2005. In conclusion, the trial justice ruled that the state had satisfied its burden of proof on the issue of defendant's consent to the release of his medical records under either a preponderance-of-the-evidence or a clear-and-convincing-evidence standard of proof. The trial justice further noted that defendant's medical records also had been properly procured by the state through a subpoena duces tecum pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure and G.L.1956 § 5–37.3–6.1.[1] The trial justice therefore denied

**1.** Rule 17(c) of the Superior Court Rules of Criminal Procedure provides:

"A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence * * *."

General Laws 1956 § 5–37.3–6.1 permits the disclosure of medical records pursuant to a subpoena. Section 5–37.3–6.1 provides as follows:

"(a) Except as provided in § 5–37.3–6, a health care provider or custodian of health care information may disclose confidential health care information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that:

"(1) A copy of the subpoena has been served by the party on the individual whose records are being sought on or before the date the subpoena was served, together with a notice of the individual's right to challenge the subpoena; or, if the individual cannot be located within this jurisdiction, that an affidavit of that fact is provided; and

"(2) Twenty (20) days have passed from the date of service on the individual and within that time period the individual has not initiated a challenge; or

"(3) Disclosure is ordered by a court after challenge.

"(b) Within twenty (20) days after the date of service of a subpoena, an individual or his or her authorized representative may file a motion to quash the subpoena in the court in which the case is pending or, if no case is pending, in superior court. A copy of the motion to quash shall be served by the movant upon the party issuing the subpoena in accordance with the rules of civil procedure.

"(c) The party issuing the subpoena may file with the court these papers, including affidavits and other sworn documents, as sustain the validity of the subpoena. The movant may file with the court reply papers in response to the issuing party's filing. The court, upon receipt of these papers may proceed in camera. The court may conduct any proceedings as it deems appropriate to rule on the motion, but shall endeavor to expedite its determination.

"(d) The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual.

"(e) In determining whether the need for information clearly outweighs the privacy of the individual, the court shall consider:

"(1) The particular purpose for which the information was collected;

"(2) The individual's reasonable expectation of privacy in the information;

"(3) The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;

defendant's motion to suppress the test results.

On May 9, 2007, defendant moved to quash the state's subpoena on grounds that the state's motion for issuance of the subpoena was not in accordance with Rule 17(c) or with the provisions of § 5–37.3–6.1. Specifically, defendant maintained that probable cause must support the issuance of a subpoena and that defendant should have been afforded the opportunity to challenge the subpoena. The state acknowledged that twenty days had not passed from the date the subpoena was served on Rhode Island Hospital. The defendant also contended that the subpoena failed to demonstrate probable cause because it was not accompanied by papers, affidavits, or other sworn documents that would sustain its validity or prove the relevance of the information sought.

The trial justice agreed that the subpoena had not been issued according to the proper procedure because defendant was not afforded a twenty-day period during which he could lodge an objection to the subpoena. The defendant agreed to a twenty-day continuance to cure the procedural defect. The trial justice also directed the state to issue a new subpoena to expedite the matter.

On May 30, 2007, a hearing was held before the trial justice on defendant's motion to quash the subpoena commanding the production of the medical records of defendant's treatment at the hospital after the accident. The defendant argued that the state failed to demonstrate probable cause for issuance of the subpoena because it failed to attach supporting affidavits or other documents.[2] The state countered that its memorandum in support of the motion cited the information packet that contained an affidavit and witness statements. The trial justice observed that § 5–37.3–6.1 indicates that the party requesting the subpoena may include affidavits tending to show probable cause, but that supporting documentation is not an affirmative requirement under the statute. She indicated that under the circumstances of the instant case she could rely upon both the information packet and the sworn testimony presented to her during the previous hearings on defendant's motion to suppress.

The trial justice then proceeded to discuss the statutory factors set forth in § 5–37.3–6.1. The trial justice cited statements contained in the information packet and witness testimony during the suppression hearings suggesting that defendant was intoxicated at the time of the accident. She also noted that the blood-alcohol-level test was performed in the ordinary course of defendant's medical treatment at the hospital. She found that disclosure of the records would not embarrass defendant, nor would it adversely affect defendant's future health care. Additionally, she concluded that the information contained in

"(4) The effect of the disclosure on the individual's future health care;
"(5) The importance of the information to the lawsuit or proceeding; and
"(6) Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure.
"(f) If the court determines that a subpoena should issue, the information shall not be disclosed for any other purpose except as authorized by this chapter.

"(g) Nothing contained in this section shall be construed to bar a health care provider or custodian of health care information from filing a motion to quash a subpoena for this information in accordance with the rules of civil procedure."

2. The defendant conceded that the twenty-day statutory time period under § 5–37.3–6.1 had been satisfied.

the medical records was important to the state's case and was not available from any other source. In conclusion, the trial justice ruled that the state's need for the records clearly outweighed defendant's privacy interests and that the state had demonstrated reasonable grounds for the subpoena.

■ The case then proceeded to trial. On June 11, 2007, the jury found defendant guilty on the charges of driving under the influence, death resulting, and driving to endanger, death resulting. The defendant was thereafter sentenced to an aggregate term of twenty-five years, with fifteen years to serve at the Adult Correctional Institutions. On August 3, 2007, defendant filed a notice of appeal to this Court. Judgment of conviction was entered on September 5, 2007.[3]

## II

### Standard of Review

■ The issuance of a pretrial subpoena duces tecum is confided to the sound discretion of the trial justice. *State v. DiPrete*, 698 A.2d 223, 225–26 (R.I.1997). This Court will not disturb the trial justice's ruling absent a showing of abuse of discretion. *See id.* In reviewing the denial of a motion to suppress potentially incriminating evidence, this Court employs the clearly erroneous standard of review. *See State v. DeOliveira*, 972 A.2d 653, 659 (R.I.2009) (applying a clearly erroneous standard of review to the denial of a motion to suppress a Breathalyzer test).

## III

### Discussion

The determinative issue before us on appeal concerns whether the state proper-ly obtained a subpoena for defendant's medical records. The defendant argues that the trial justice erred in denying his motion to suppress the results of the blood-alcohol-level test performed at Rhode Island Hospital incident to his treatment after the accident. The defendant contends that, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and article 1, section 6, of the Rhode Island Constitution, proof of patient consent to the release of medical records is a condition precedent to the admissibility of such documents at trial.

■ As a preliminary matter, we note that the cited provisions of the United States and Rhode Island Constitutions are inapplicable under the facts of the instant case because the blood-alcohol-level test was not conducted at the direction of the police, but rather was administered by hospital personnel in the normal course of defendant's treatment. In the absence of state action, the specific constitutional provisions cited by defendant cannot be brought to bear. *See State v. Guido*, 698 A.2d 729, 733 (R.I.1997) (holding that there was no state action implicated under analogous circumstances); *see also United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("This Court has also consistently construed [the Fourth Amendment to the United States Constitution] as proscribing only governmental action * * *."); *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883) ("It is State action of a particular character that is prohibited [by the Fourteenth Amendment to the United States Constitution]."). In his brief to this Court, defendant concedes that there is no state action at issue in this case. The defendant made a similar concession at oral argument before this Court.

---

**3.** Although defendant's appeal was premature, it is still valid because final judgment was entered. *See State v. Diefenderfer*, 970 A.2d 12, 23 n. 24 (R.I.2009).

This Court has stated that under § 5–37.3–6.1 a patient "must be afforded notice and an opportunity to be heard before process may issue for any confidential health care information." *In re Grand Jury Subpoena,* 748 A.2d 821, 826 (R.I. 2000). In the case at bar, we are convinced that both requirements ultimately were satisfied. The defendant had several hearings on the matter; and, at the hearing on May 30, 2007, he conceded that the satisfaction of the mandatory twenty-day-notice period no longer was at issue after the trial justice granted a continuance of his motion to quash.

■ After the continuance, defendant attacked the subpoena on the grounds that it was not properly supported by an affidavit demonstrating probable cause. The trial justice ultimately ruled that an affidavit was not a prerequisite for issuance of the subpoena in light of the clear statutory language of § 5–37.3–6.1(c), which provides that a "party issuing the subpoena *may* file with the court [such] papers, including affidavits and other sworn documents, as sustain the validity of the subpoena." (Emphasis added.) There can be little doubt that the trial justice properly construed that section of the statute. *See Quality Court Condominium Association v. Quality Hill Development Corp.,* 641 A.2d 746, 751 (R.I.1994) ("[T]he use of the word 'may' rather than the word 'shall' indicates a discretionary rather than a mandatory provision."). Moreover, affidavits and supporting documents would have been superfluous in the instant case, given the fact that substantial evidence was presented in the information packet and through testimony at the suppression hearing supporting the issuance of the subpoena. The trial justice carefully analyzed the requisite statutory factors in determining that the state's need for defendant's medical records outweighed defendant's privacy concerns, and we discern no abuse of discretion in her determination.

■ The defendant argues that the state was required to prove that he freely and voluntarily consented to the release of his confidential medical records to the Rhode Island State Police and that, in the absence of such a showing, the records should have been suppressed by the trial justice. He cites the Confidentiality of Health Care Communications and Information Act, § 5–37.3–4, in support of his contention. That statute provides, in pertinent part, as follows:

> "Except as provided in subsection (b) of this section *or as specifically provided by the law,* a patient's confidential health care information shall not be released or transferred without the written consent of the patient or his or her authorized representative, on a consent form meeting the requirements of subsection (d) of this section." Section 5–37.3–4(a)(1) (emphasis added).

The state sought the defendant's medical records through a subpoena pursuant to the procedure set forth in § 5–37.3–6.1. Section 5–37.3–4 and the issue of the defendant's consent are therefore irrelevant for the purposes of the issue before us on appeal.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court and remand the record of the case to that court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.